Roger MONETTE and Doris Monette,
Plaintiffs–Appellants,

v.

ELECTRONIC DATA SYSTEMS
CORPORATION, Defendant–
Appellee.

No. 95–1114.

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1996.

Decided July 30, 1996.

Charles W. Palmer (argued and briefed), Robb, Messing & Palmer, Taylor, MI, for Plaintiffs–Appellants.

Brian B. Smith, Electronic Data Systems Corp., Troy, MI, Martin T. Wymer (argued and briefed), Duvin, Cahn & Hutton, Detroit, MI, for Defendant–Appellee.

Before: LIVELY, MARTIN, and MOORE, Circuit Judges.

MARTIN, J., delivered the opinion of the court, in which MOORE, J., joined. LIVELY, J. (p. 1189), delivered a separate concurring opinion.

BOYCE F. MARTIN, Jr., Circuit Judge.

Roger Monette appeals the district court's award of summary judgment in favor of the defendant Electronic Data Systems on his claim that the defendant discriminated against him on the basis of his disability, and the court's refusal to allow him to file an amended complaint alleging retaliatory dis-

charge. For the reasons set forth below, we AFFIRM in part and REVERSE in part.

Roger Monette worked as a customer service representative for defendant Electronic Data Systems. As part of his duties, Monette delivered audio and visual equipment to various areas of the office. On February 17, 1993, Monette was injured when a television and video cassette recorder fell off the cart he was pushing, hitting him on the back and shoulder. Monette requested an indefinite medical leave, and received full pay and benefits from Electronic Data Systems for the next seven months. During that time Monette submitted several medical reports from various physicians detailing his inability to return to work. In August of 1993, Monette filed for long-term disability benefits, claiming that he was completely incapacitated and unable to perform the necessary functions to return to his old job. Electronic Data Systems denied Monette's application for long-term disability benefits and Monette's full pay and benefits ceased on September 15.

Monette recovered from his total incapacitation soon thereafter, showing up to work unannounced and with a note from his doctor on October 11. Unfortunately, Monette's position at Electronic Data Systems had been filled during his eight month absence. No other customer service representative positions were available.

Over the next thirty-seven days, during which time Monette was placed on unpaid personal leave, Monette's supervisor Laura Frizzell conducted a job search in an attempt to find Monette another position with the company. To facilitate her efforts, Frizzell claims that she asked Monette to provide her with an updated resume and that Monette did not comply with this request. Monette disputes this fact. During her thirty-seven day search, Frizzell located a possible position in Midland, Michigan. However, Monette did not want to move out of the Detroit area and did not interview for this position. Frizzell arranged for interviews for two computer operator positions that were available

in the Detroit area. Unfortunately, Monette did not receive an offer of employment after either of the interviews. Each interviewer stated that Monette lacked the requisite technical computer skills and that Monette was less than enthusiastic at his interviews. Having failed in its attempts to relocate Monette to another position, Electronic Data Systems permanently terminated his employment on November 19, 1993.

Monette subsequently filed suit against Electronic Data Systems in state court, alleging that his former employer discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Michigan Handicappers' Civil Rights Act, Mich. Comp. Laws § 37.1102.[1] The defendant subsequently removed the case to federal court in the Eastern District of Michigan. Over the next several months, the parties engaged in extensive discovery proceedings which, under the district court's scheduling order, ceased on October 11, 1994. All dispositive motions were to be filed by October 31. On October 31, Electronic Data Systems filed a summary judgment motion, to which Monette filed a responsive brief in opposition. On November 28, Monette filed a motion for leave to file a second amended complaint, seeking to assert a claim for retaliatory discharge, alleging that Electronic Data Systems fired him in retaliation for his application for worker's compensation benefits.

On December 14, the district court awarded summary judgment in favor of Electronic Data Systems on Monette's state and federal disability discrimination claims. In an accompanying order, the district court also denied Monette's motion to file a second amended complaint. Monette timely appealed to this Court.

█ In this appeal, Monette takes issue with the district court's award of summary judgment and the district court's refusal to allow him to file a second amended complaint. We review the district court's award of summary judgment *de novo*. Summary

---

1. Doris Monette, Roger Monette's wife, also asserted a claim against Electronic Data Systems seeking damages for loss of consortium. Loss of consortium claims are contingent upon recovery by the spouse under Michigan law. Accordingly, our resolution of the issues on appeal also governs Ms. Monette's claim.

judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986) (citations omitted). After careful review of the record, we believe the district court properly awarded summary judgment to Electronic Data Systems and dismissed Monette's discrimination claims.

The district court concluded that it was unnecessary to determine whether Monette had established a *prima facie* case of discrimination under the Act, holding that Electronic Data Systems had established a legitimate, nondiscriminatory reason for terminating Monette. The court noted that the defendant filled Monette's position while Monette was on medical leave and was informing the defendant that he was unable to perform his job under any circumstances. Accordingly, when Monette returned to work unannounced, no customer service representative slot was available. The court found that requiring Electronic Data Systems to hold Monette's position open indefinitely, when it had no way of knowing whether or when Monette would return to work, would work an undue hardship on Electronic Data Systems. Further, the court recognized that the Americans with Disabilities Act did not require the defendants to 'create' another position for Monette in the absence of an available vacancy. In light of its belief that Electronic Data

Systems offered a legitimate reason for replacing Monette, and did not fail to make reasonable accommodation for Monette's handicap, the district court awarded summary judgment in favor of Electronic Data Systems.

In this appeal, Monette argues that Electronic Data Systems failed to reasonably accommodate his handicap by granting him only thirty-seven days of unpaid leave while they attempted to find a position for him. Instead, Monette claims that the only 'reasonable' accommodation would have been to allow Monette to remain on unpaid leave indefinitely until another position opened up within the company. Along similar lines, Monette argues that the defendants should have considered him for jobs other than customer service representative or computer technician as a reasonable accommodation.[2] On a somewhat different tack, Monette points to two situations in which the defendants held an employee's position open while they were on medical leave and claims that this evidence creates a genuine issue of material fact as to whether the defendants discriminated against him.

Electronic Data Systems asserts two arguments in rebuttal. First, the defendants point out that there were no jobs available when Monette returned to work. Second, the defendants argue that, even if they had a duty (under the requirement that they must make a reasonable accommodation to Monette's disability) to attempt find work for Monette, they reasonably accommodated his disability by placing him on unpaid medical leave for thirty-seven days while they attempted to place him in a new position.

▇▇▇ The analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1995). *Maddox v. University of Tennessee*, 62 F.3d 843, 846

---

**2.** Monette spends several pages of his brief establishing that he *physically* could have performed his former duties with reasonable accommodation from Electronic Data Systems. However, it appears to this Court that this argument is irrele-

vant. The defendants are not disputing that Monette could have performed the duties of his former job if a position had been available, and we assume this fact to be true for the purposes of this appeal.

n. 2 (6th Cir.1995).[3] The Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To recover on a claim of discrimination under the Act, a plaintiff must show that: 1) he is an individual with a disability; 2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap.[4] *Maddox,* 62 F.3d at 846 (relying on *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988) (Rehabilitation Act claim), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), to analyze claims brought under Americans with Disabilities Act and Rehabilitation Act); *accord Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 761 (5th Cir.1996); *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995); *Taub v. Frank,* 957 F.2d 8, 10 (1st Cir.1992) (Rehabilitation Act claim). In cases in which the plaintiff alleges that he or she is the victim of discriminatory treatment, a plaintiff may attempt to establish

unlawful discrimination by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, *Rizzo,* at 761; *White,* 45 F.3d at 361 n. 6, or by introducing indirect evidence of discrimination to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for making the adverse employment decision. *See, e.g., Rizzo,* at 761.

Defining and applying an appropriate framework for analyzing claims of discrimination based on an individual's disability has proven to be a difficult task.[5] Courts have applied, in some cases involving a claim of discriminatory treatment on the basis of a disability, a burden-shifting analysis roughly equivalent to that set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981) for claims of disparate treatment discrimination under Title VII, even where direct evidence of discrimination exists. *See Jasany v. United States Postal Serv.,* 755 F.2d 1244 (6th Cir.1985); *Prewitt v. United States Postal Serv.,* 662 F.2d 292

---

**3.** Claims of handicap discrimination under Michigan law essentially track those under federal law. *See Sandison v. Michigan High School Athletic Ass'n, Inc.,* 863 F.Supp. 483, 487 (E.D.Mich. 1994), *rev'd on other grounds,* 64 F.3d 1026, 1035–37 (6th Cir.1995). Therefore, our resolution of Monette's claim under the federal statute also dispenses with his claim under the Michigan Handicappers' Civil Rights Act. *See Ashworth v. Jefferson Screw Products, Inc.,* 176 Mich.App. 737, 440 N.W.2d 101, 104–05, *appeal denied,* 433 Mich. 873, 447 N.W.2d 690 (1989); *Hall v. Hackley Hosp.,* 210 Mich.App. 48, 532 N.W.2d 893, 897–98 (1995). In addition, we note that under the Michigan statute, employers are not even required to place disabled employees in a vacant position. *Id.*

**4.** For claims brought under the Rehabilitation Act, plaintiffs must also establish that the defendant is a recipient of federal funding. *See Doherty,* 862 F.2d at 573.

**5.** Plaintiffs may proceed on any one or more of several theories of discrimination. For example, under a disparate impact theory, disabled individuals may bring a claim against a facially neutral policy or statute which affects disabled individuals in a significantly discriminatory manner. *See Alexander v. Choate,* 469 U.S. 287, 298–301, 105 S.Ct. 712, 718–20, 83 L.Ed.2d 661 (1985); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971) (Title VII claim). If a plaintiff is able to establish that the facially neutral policy disparately impacts upon his or her protected group, the burden shifts to the defendant employer to establish that the policy exists out of "business necessity." *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853 (Title VII case); *see also* 42 U.S.C. § 12112(b).

Like Title VII, the Americans with Disabilities Act requires employers to eliminate ostensibly neutral barriers that disparately impact the disabled. See 42 U.S.C. § 12112(b)(3)(A)-(B). Similarly, in cases analytically similar to Title VII disparate impact claims, employers are required to reasonably accommodate disabled individuals unless such accommodation imposes an undue hardship, *e.g.,* 42 U.S.C. § 12112(b)(5)(A), and are required to eliminate qualifications standards or job requirements that disparately disadvantage the disabled unless such requirements are "job-related," and/or "essential" to satisfactory performance of the job. *Id.* at § 12112(b)(6).

(5th Cir.1981); *Pushkin v. Regents of the Univ. of Colorado*, 658 F.2d 1372 (10th Cir. 1981). However, the supporting rationale for this modified analysis is not entirely persuasive, and we pause to examine more closely the frameworks under which disability discrimination claims should be analyzed.

In Title VII cases applying the *McDonnell Douglas/Burdine* formula, where no direct evidence of discrimination exists, a plaintiff may establish a *prima facie* case of discrimination by establishing that: 1) she is a member of a protected class; 2) she is qualified for the position; 3) she suffered an adverse employment decision; and 4) she was replaced by a member outside the protected class. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991) (relying on *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir.1989), and *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824).[6] If the plaintiff is able to establish a *prima facie* case of discrimination, the burden of production then shifts to the employer to assert a legitimate, non-discriminatory justification for its action. *Id.* If the employer fails in this burden of production, the plaintiff need not introduce any other evidence of

discrimination, and a mandatory inference of discrimination must be drawn by the fact finder. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). However, once the employer has come forward with evidence of a legitimate reason for its action, the inference shifts from a mandatory one the fact finder must draw, to a permissive one the fact finder may draw, and the burden shifts back to the employee to establish that the employer's proffered explanation is a mere pretext for unlawful discrimination. *Id.* at 510–11, 113 S.Ct. at 2749; *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994).

In *Pushkin v. Regents of Univ. of Colorado*, the Tenth Circuit developed a modified burden shifting approach—modeled on the *McDonnell Douglas* framework—for analyzing disability discrimination claims. 658 F.2d at 1387. *Pushkin* involved a claim by a medical doctor who alleged that he had been wrongfully denied admission to the University of Colorado Psychiatric Residency Program because he suffered from multiple sclerosis. The appellate court upheld the district

---

**6.** In *McDonnell Douglas*, the Court characterized the fourth prong of the test as requiring that the plaintiff show "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. The Court also, however, explained that the elements required to establish a *prima facie* case may differ depending on the factual scenario giving rise to the litigation. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. Accordingly, this Court has at various times characterized the fourth prong of the test as requiring the plaintiff to show that he or she was replaced by a person outside the protected class. *See, e.g., Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992)); *Ang*, 932 F.2d at 548. In a recent age discrimination case, the Supreme Court held that a plaintiff bringing a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., need not establish as part of a *prima facie* case that he or she was replaced by a person outside the protected class. *O'Connor v. Consolidated Coin Caterers, Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). The Court's reasoning, however, does not necessarily apply to other types of discrimination claims. As the Court explained, the Act bans discrimination based on an employee's age in general, and limits the

protected class to those aged forty or older; it does not ban discrimination against employees *because* they are over the age of forty. *Id.* In light of this statutory framework, the Court concluded that "there can be no greater inference of age discrimination (as opposed to '40 and over' discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old." Accordingly, the Court held that a plaintiff need not show that he or she was replaced by a member outside the protected class as an element of his or her *prima facie* case. *Id.*

This reasoning does not apply with equal force to other types of discrimination claims. For example, a claim of gender discrimination under Title VII is a claim by the plaintiff that she was discriminated against because she is a woman. Because the claim is founded upon the allegation that the defendant discriminated on the basis of the plaintiff's female status, a lesser inference of discrimination arises if it is established that the defendant hired another female. Conversely, if the plaintiff shows that the defendant hired a male, a greater inference that the defendant discriminated on the basis of the plaintiff's female status exists. Despite the foregoing comments, however, we do not believe a disabled individual need always establish that he or she was replaced by someone outside the protected class as part of her *prima facie* case. *See infra* n.11.

court's findings that "Dr. Pushkin was rejected from the residency program on the basis that his multiple sclerosis would preclude him from performing well in the duties of the program . . . ." *Id.* at 1382–83. The court then characterized the issue to be decided in the case:

> The record is clear that Dr. Pushkin established that he had the necessary ability despite his handicap. The examining committee, however, focused on the handicap continuously in connection with determining whether to admit him to the residency program. It emphasized factors such as the effect of the handicap on patients and the resulting effect on Dr. Pushkin. Thus, the issue is not merely whether the handicap played a prominent part in his rejection, as in cases dealing with alleged discrimination on the basis of race, for example (where race is never expressly mentioned as a consideration), the issue is whether rejecting Dr. Pushkin after expressly weighing the implication of his handicap was justified.

*Id.* at 1385–86. Thus, the court expressly recognized that the evidence established that the defendants had taken Dr. Pushkin's disability into account when making the decision to refuse admission into the program. Believing that the *McDonnell Douglas* framework must be modified to take account of the 'unique' fact that defendants often rely on an individual's disability in disability discrimination cases, the Tenth Circuit established the following test in *Pushkin:*

1) The plaintiff must establish a *prima facie* case by showing that he was an otherwise qualified handicapped person apart from his handicap, and was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap;

2) Once a plaintiff establishes his *prima facie* case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements in spite of his handicap, or that his rejection from the program was for reasons other than his handicap;

3) The plaintiff then has the burden of going forward with rebuttal evidence showing that the defendants' reasons for rejecting the plaintiff are based on misconceptions or unfounded factual conclusions, and that reasons articulated for the rejection other than the handicap encompass unjustified consideration of the handicap itself.

The *Pushkin* court apparently believed that this test would take account of the fact that employers often rely on an employee's disability in making employment decisions, a fact rarely present in Title VII race or gender discrimination cases. What the court failed to recognize, however, is that when an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists. Because direct evidence of the employer's discrimination exists, application of the *McDonnell Douglas* burden-shifting framework is inappropriate. *Cf. Healey v. Southwood Psychiatric Hosp.,* 78 F.3d 128, 131–32 (3d Cir.1996) (pointing out in a Title VII case that the *McDonnell Douglas* framework does not apply in cases where direct evidence of discrimination exists). The only question left for resolution, in most disability discrimination cases in which the employer admits reliance on the disability (or other direct evidence of discrimination exists), is whether the adverse employment decision was based *solely* on the employee's disability. This question is resolved by answering what is most often the disputed issue in cases in which the employer has relied on the employee's disability to make the employment decision; whether the employee is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job. *This* disputed issue can be resolved by the introduction of direct, objective evidence concerning the disabled plaintiff's individual abilities to perform the essential functions of the job without reasonable accommodation, or whether a reasonable accommodation is possible. Finally, equally important to note is that the fact sought to be extracted through application of the *McDonnell Douglas* framework, i.e., whether the employer based its decision on race, gender (in Title VII cases), or handicap status (in disability discrimination cases), is already

established in cases in which the employer admits (or direct evidence shows) reliance on an employee's disability.

The Tenth Circuit recently recognized this problem in *White v. York Int'l Corp.*, 45 F.3d 357, 361 n. 6 (10th Cir.1995). The court stated:

> We developed an analysis in *Pushkin*, much like the *McDonnell Douglas* test applicable in Title VII cases, in order to "sharpen the inquiry into the elusive factual question of intentional discrimination." Under our *Pushkin* analysis, a plaintiff establishes his prima facie case by showing that he is "an otherwise qualified handicapped person apart from his handicap," and that he had been rejected under circumstances which give rise to an inference that his rejection was based solely on his disability. Obviously, the *Pushkin* analysis will not find application in all cases. Where, as here, an employer readily acknowledges that the decision to terminate the employee was premised, at least in part, on the employee's disability, the ultimate purpose of *Pushkin* analysis will have been achieved from the outset. In such cases, the objective claims presented may be tested through the application of traditional burdens of proof. . . .

*Id.* (citations omitted). Thus, the *White* court recognized that the *Pushkin*-modified *McDonnell Douglas* approach is not applicable when the employer admits taking the employee's handicap into account in making its employment decision, and instead attempts to defend its decision on the ground that the plaintiff is not otherwise qualified for the position, with or without reasonable accommodation.[7]

This Circuit has recited the *Pushkin* test at least twice during the course of analyzing a claim under the Rehabilitation Act. *See Harris v. Adams*, 873 F.2d 929, 932 (6th Cir.1989); *Jasany*, 755 F.2d at 1249 n.5. In *Jasany*, although we ultimately held that the plaintiff was not "handicapped" within the meaning of Rehabilitation Act, we discussed in dicta the *Pushkin* burden-shifting approach with apparent approval. *Jasany*, 755 F.2d at 1249 n. 5. However, we were concerned primarily with illustrating why a plaintiff must, as an initial matter, establish that he or she is "handicapped" within the meaning of the statute, and did not discuss *why* a defendant employer should bear the burden of showing that the plaintiff is not "otherwise qualified" for the position sought. *Id.* Relying on a Fifth Circuit case which also adopted the *Pushkin* analysis, *Prewitt v. United States Postal Service*, we stated:

> The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case. Once a prima facie case has been presented, the burden shifts to the defendant employer to demonstrate that the challenged criteria are job related and required by business necessity, and that reasonable ac-

---

7. The court in *White* characterized the *Pushkin* case as one in which "the plaintiff claimed that the University's stated reason for denying him admission to its psychiatry program was a pretext for unlawful discrimination based on his disability." *White*, 45 F.3d at 361 n. 6. Portions of the *Pushkin* opinion perhaps support this reading of the case. However, properly understood, *Pushkin* was a case in which the plaintiff introduced direct evidence of discrimination. Indeed, in *Pushkin* ample evidence established that the admissions committee relied on the plaintiff's disability in making its admissions determination. *Pushkin*, 658 F.2d at 1387–88. In our view, the disputed issue in *Pushkin* was whether the plaintiff was otherwise qualified to perform the essential functions of the residency despite his disability. Once the court found that direct evidence established that the admissions committee relied on the plaintiff's disability in making its admissions determination, the ques-

tion became whether that reliance was justified. The court found to the contrary, and concluded that the evidence established that the plaintiff was qualified despite his disability. *Id.* at 1387.

With these facts in the record, we fail to see why burden shifting was necessary to conclude that the defendants had discriminated against the plaintiff by reason of his disability in violation of the Rehabilitation Act. The plaintiff had established: 1) that he was disabled; 2) that he was qualified despite his disability; and 3) that the defendants rejected his application *solely* on the basis of his disability. Because the plaintiff had established that he was qualified for admission despite his disability, and the defendants' justification for concluding otherwise was based on his disability, the defendants had no reason *other* than the plaintiff's disability to rely on in justifying their decision. Accordingly, the admissions committee's decision became one based *solely* on the plaintiff's disability.

commodation is not possible. If the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation.

662 F.2d at 306–08 (citation omitted). A careful reading of this quote reveals that the panel clearly could not have been attempting to set forth a general rule for all disability discrimination cases, and instead was only pointing out that a defendant bears no burden of production or proof if the plaintiff cannot establish that he or she is disabled, a proposition with which we entirely agree. However, in many disability discrimination cases, the plaintiff does not challenge a particular job requirement or seek reasonable accommodation from the employer, which would render this test inapplicable. Further, in many cases the employer disclaims reliance on the plaintiff's disability in making its adverse employment decision, and whether a particular job criterion is essential or the employee can be reasonably accommodated is not at issue. Obviously, the panel did not intend its discussion to govern all disability discrimination cases. Finally, we note that, although we discussed the *Pushkin* approach in a footnote in *Jasany*, we never expressly adopted the burden-shifting test articulated therein. *Id.*

In *Harris v. Adams*, 873 F.2d 929, 932 (6th Cir.1989), we again recited the first two prongs of the *Pushkin* test when giving a "cursory review" to the plaintiff's disability discrimination claim. As was the case in *Jasany*, we ultimately held that the plaintiff had not established that he was disabled within the meaning of the statute, and rejected his claim on this ground. Alternatively, we noted that the plaintiff had not produced any evidence to rebut his employer's claim that the plaintiff's application was rejected for reasons unrelated to his disability. Again, we did not examine the merits of the (modified) burden shifting analysis adopted in *Pushkin*, nor did we determine whether

this analysis should apply to all handicap discrimination claims.

It is clear then that, although this Circuit has relied on *Pushkin* to state the analysis to be used in disability discrimination cases, we have not independently examined whether the test is warranted or appropriate in every case. We believe that it is not. As the Tenth Circuit noted in *White,* the test is inappropriate for cases in which the employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision. *White,* 45 F.3d at 361 n. 6. The *McDonnell Douglas* burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant in such cases, and the plaintiff has direct evidence of discrimination on the basis of his or her disability. Assuming that the plaintiff in such a case is in fact statutorily "disabled," the determinative disputed issue in the case will not be the employer's "intent," but instead in most cases will be whether the employee is "otherwise qualified," with or without reasonable accommodation, to perform the job, a factual dispute capable of resolution through traditional methods of proof.

Turning to cases in which the employer relies on the employee's disability in its decisionmaking, the disputed issue will almost always be whether the employee is "otherwise qualified" to perform the job. *See Norcross v. Sneed,* 755 F.2d 113, 116–17 (8th Cir.1985); *Doe v. New York Univ.,* 666 F.2d 761, 776 (2d Cir.1981). These cases fall into two broad categories: 1) those in which the plaintiff is not seeking a reasonable accommodation but is instead making the straightforward claim that he or she can in fact function capably in the sought after position as it exists; and 2) those in which the plaintiff challenges a particular job requirement as unessential or claims that he or she can do the job with reasonable accommodations on the part of the employer.[8] In cases in which

---

**8.** Some courts have distinguished cases in which an employee claims that a particular job requirement is not essential for satisfactory job performance from those in which an employee seeks a reasonable accommodation on the part of the employer. *See, e.g., Prewitt,* 662 F.2d at 307–08.

The claims may indeed differ analytically. As a practical matter, however, these cases are virtually indistinguishable. In either case, the plaintiff will have the burden of establishing that he or she is otherwise qualified to perform the essential functions of the job, absent the challenged

the plaintiff is claiming to be qualified to perform the essential functions of the job without reasonable accommodation, and the employer's defense is that the employee's handicap precludes satisfactory job performance, objective evidence will suffice to establish the fact in question; namely whether the employee's handicap renders him or her unqualified to perform the essential functions of the job. There is no immediately apparent need to shift the burden to the employer in such cases on the issue of whether the employee can perform the essential functions of the job, and the disputed factual question can be resolved through traditional methods of proof.[9]

 In cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issues will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved

through direct, objective evidence. The Americans with Disabilities Act provides a guide for determining the burden of proof in these cases. 42 U.S.C. § 12112(b)(5)(A) states that an employer has "discriminated" against a disabled individual by:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

The language of this provision makes it clear that the employer has the burden of persuasion on whether an accommodation would impose an undue hardship. However, the disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable. The Seventh Circuit has described the employee's initial burden on this issue as showing "that the accommodation is reasonable in the sense both of efficacious and of proportional to costs." *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir.1995).[10] Additionally, nothing in

job criteria or with the proposed reasonable accommodation. The employer then bears the burden of proving that a particular job requirement is essential as a business necessity, or that a proposed accommodation imposes an undue hardship upon the employer.

9. In a simple case in which the only disputed issue is whether the employee is otherwise qualified, without any accommodation, to perform the essential functions of the job, resolution of this issue is dispositive. For example, suppose a disabled individual brings suit, claiming that she can perform the essential functions of the job without accommodation from the employer. The employer, on the other hand, asserts that the plaintiff's handicap precludes satisfactory performance of essential job functions. The employer, in this hypothetical case, has admitted reliance on the disability, although the employer *has not* admitted *sole* reliance on the plaintiff's disabled status. Instead, the employer claims that the plaintiff's disability precludes him or her from performing satisfactorily the essential functions of the job. However, resolution of the disputed factual issue of the plaintiff's ability to do the job will resolve two elements required to establish the plaintiff's claim of disability discrimination in such a case. If the plaintiff establishes that she is in fact able to perform the essential functions of the job, that element of her claim is satisfied.

In addition, the plaintiff has also established that she suffered an adverse employment decision *solely* because of her disability. Because the employer has no reason left to rely on to justify its decision *other* than the employee's disability, the employer's decision becomes one based *solely* on the plaintiff's disabled status.

10. The interrelationship between the terms "reasonable" accommodation and "undue hardship" is perhaps somewhat complex. In a case-specific context, the terms are virtually mutually exclusive in the sense that "undue hardship" defines which accommodations an employer will be required to adopt. If an employer shows that a proposed accommodation imposes an undue hardship, then it would be "unreasonable" to require this employer to adopt that accommodation, regardless whether another employer, in a different factual context, may be required to adopt that same accommodation. More broadly, however, the terms can co-exist. In our view, determining whether a proposed accommodation is "reasonable" requires a factual determination of reasonableness (perhaps through a cost-benefit analysis or examination of the accommodations undertaken by other employers) untethered to the defendant employer's particularized situation. Once a determination is made that a proposed accommodation is, in a sense, "generally"

the statute alters the burden the disabled individual bears of establishing that he or she is capable of performing the essential functions of the job with the proposed accommodation. Put simply, if the employer claims that a proposed accommodation will impose an undue hardship, the employer must prove that fact. If the employer claims instead that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation.

■ Similarly, if a disabled individual is challenging a particular job requirement as unessential, the employer will bear the burden of proving that the challenged criterion is necessary. 42 U.S.C. § 12112(b)(6) provides guidance on this issue. That provision of the statute states that an employer discriminates within the meaning of the statute by:

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

This language indicates that an employer bears the burden of proving that a particular hiring policy is "job-related" and "consistent with business necessity." Although this section of the statute expressly concerns only qualification standards, testing procedures, and selection criteria that tend to screen out

disabled individuals, we believe its clear import dictates that employers bear the burden of proving that a challenged job requirement is job-related. We note again, however, that the disabled individual retains the burden of proving that he or she is qualified to perform the essential functions of the job absent the challenged job requirement.

■ Distinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs. *See Norcross,* 755 F.2d at 116–17. As we have already noted, when the plaintiff has direct evidence of discrimination based on his or her disability, there is no need for a *McDonnell Douglas* type burden shift and traditional burdens of proof will apply. Of course, as explained above, the statute expressly places upon the employer the burden of proving that a particular job requirement is job-related, or that a particular reasonable accommodation is an undue hardship. Nonetheless, the disabled individual always bears the burden of proving that he or she is "otherwise qualified" for the position in question, absent the challenged job function or with the proposed accommodation. A *McDonnell Douglas* burden-shifting type analysis will, however, be appropriate in some disability discrimination cases. In cases in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability, the plaintiff may attempt to establish his or her claim indirectly through the burden shifting method borrowed from *McDonnell Douglas* by establishing a *prima facie* case of

---

reasonable, the defendant employer then bears the burden of showing that the accommodation imposes an undue hardship upon it, given the employer's specific situation. Viewed in this way, the parties' respective burdens of persuasion become clear. The plaintiff bears the initial burden of showing that a "reasonable" accommodation is possible. If the plaintiff does so, the defendant employer has an opportunity to persuade the fact finder that the proposed accommodation imposes an undue hardship.

We note also that, under the Michigan disability statute, M.S.A. § 3.550(210)(1), the defendant bears only the burden of producing evidence that a proposed accommodation would impose an

undue hardship. *See Hall,* 532 N.W.2d at 896. Once the employer satisfies this burden, the employee bears the ultimate burden of persuading the trier of fact that the proposed accommodation would not impose an undue hardship upon the employer. *Id.* This is contrary to the express language of the Americans with Disabilities Act, which clearly places upon the employer the burden of establishing that a proposed accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). However, given our conclusion that Monette has failed to propose a "reasonable" accommodation under the federal statute, his claim also fails under the state statute.

discrimination and shifting the burden to the employer to offer a legitimate, nondiscriminatory reason for its action.

■ We must say a word about what is normally meant by the phrase *"prima facie"* case, at least as it is used in the context of the *McDonnell Douglas* burden-shifting formula. *"Prima facie,"* as used in this context, represents a certain set of facts, each of which are established by objective evidence under traditional burdens of proof, from which the fact finder will presume the existence of another fact, absent proof to the contrary. In Title VII cases, this presumed fact is of course, the defendant's "intent" to discriminate against the plaintiff. "Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason'." *Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094).

■ The Supreme Court recently explained the effect of a prima facie case—and the employer's burden of production in rebuttal—in *Hicks:*

> If the finder of fact ... finds that the prima facie case is supported by a preponderance of the evidence[,] it must find the existence of the presumed fact of unlawful discrimination and must, therefore, render a verdict for the plaintiff [if the defendant fails its burden of production].... Thus, the effect of failing to produce evidence to rebut the *McDonnell Douglas* ... presumption is not felt until the prima facie case has been established, either as a matter of law (because the plaintiffs facts are uncontested) or by the fact finder's determination that the plaintiff's facts are supported by a preponderance of the evidence. It is thus technically accurate to describe the sequence as we did in *Burdine:* "First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima fa-

cie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.".... As a practical matter, however, and in the real-life sequence of a trial, the defendant feels the "burden" not when the plaintiff's prima facie case is proved, but as soon as evidence of it is introduced. The defendant then knows that its failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it unless the plaintiff's prima facie case is held to be inadequate as a matter of law or fails to convince the fact finder. It is this practical coercion which causes the *McDonnell Douglas* presumption to function as a means of "arranging the presentation of evidence."

*Id.* at 510 n. 3, 113 S.Ct. at 2748 n. 3. As this quotation explains, analytically the "burden-shift" created by the *prima facie* case does not occur unless the plaintiff establishes the elements of the *prima facie* case by a preponderance of the evidence. If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent, technically the "burden" never shifts to the defendant.

■ With these comments in mind, we believe a plaintiff may establish a *prima facie* case of handicap discrimination by showing that: 1) he or she is disabled, *see Jasany,* 755 F.2d at 1249–50, 2) is otherwise qualified for the job, with or without "reasonable" accommodation, *see White,* 45 F.3d at 361 n. 6, 3) suffered an adverse employment decision, see *Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747, 4) the employer knew or had reason to know of his or her disability, *see Morisky,* 80 F.3d at 448; and 5) after rejection or termination the position remained open, or the disabled individual was replaced, *cf. McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Proof of these five facts, in the absence of an explanation by the employer, creates a mandatory inference that the employer intentionally discriminated against the disabled individual by taking an adverse employment action "solely" because of his or her handicap.[11] If the employer offers a

---

11. We do not believe that the plaintiff need nec-

essarily establish that he or she was replaced by

legitimate reason for its action that is unrelated to the employee's disability, the plaintiff will bear the burden of establishing that the proffered reason is a pretext for unlawful discrimination.

To sum up, if the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap:

1) The plaintiff bears the burden of establishing that he or she is "disabled."

2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.[12]

If the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a *prima facie* case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.[13] The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the

---

a person outside the protected class as an element of his or her *prima facie* case. The Americans with Disabilities Act prohibits discrimination against disabled individuals "because of the disability of such individual." 42 U.S.C. § 12112(a). Unlike traits such as gender or race, which are uniform among members of the protected class, disabilities are diverse. Given the somewhat unique characteristics of various disabilities, and the differences between individuals afflicted with a particular disability, replacement of one disabled individual with another disabled individual does not necessarily weaken the inference of discrimination against the former individual that arises through establishment of the five predicate facts set forth above. *Cf. O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310; *see also Prewitt,* 662 F.2d at 307 (noting that the fact that an employer hires several individuals with a particular disability is not probative of whether that employer has discriminated against a blind person). However, as the Supreme Court explained in *McDonnell Douglas,* "[t]he facts necessary will vary ... and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. Accordingly, the precise characterization of the fifth prong of the test will sometimes vary depending upon the factual scenario confronting the court.

12. When the employee seeks a reasonable accommodation, she must establish that a "reasonable" accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation. If the plaintiff establishes that a reasonable accommodation is possible, the employer bears the burden of proving that such reasonable accommodation would impose an undue hardship. *See Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir.1995). The Eighth Circuit's approach in *Benson* differs slightly from the test set forth here. In *Benson,* the court held that, if an employee makes a facial showing that a reasonable accommodation is possible, the employer bears the burden of showing that the employee cannot perform the essential functions of the job even with the proposed reasonable accommodation. *Id.* We do not agree that the employer bears this burden. The employer *will* bear the burden of establishing that a proposed reasonable accommodation imposes an undue hardship, but there is no reason for also requiring the employer to show that the employee is unqualified for the position even with the proposed accommodation. We believe the disabled individual always bears the burden of proving that he or she is qualified to perform the essential functions of the job, even with the proposed accommodation.

13. At least two courts have held that a plaintiff must show that his or her employer had "actual or constructive" knowledge of the disability as part of a *prima facie* Americans with Disabilities Act claim. *Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir.1996); *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 932, 933 (7th Cir. 1995). This Circuit has also reached this conclusion in a similar context in a Rehabilitation Act case. *Landefeld v. Marion General Hosp.,* 994 F.2d 1178, 1181–82.

ultimate burden of persuasion at all times. See *Hicks,* 509 U.S. at 506–11, 113 S.Ct. at 2747–49.

We turn now to the merits of Monette's arguments on appeal. The district court assumed as established the elements of Monette's *prima facie* case and held that Monette had failed to show that Electronic Data Systems' proffered reasons for its action were pretextual, apparently analyzing the case under a *McDonnell Douglas* type framework. However, we believe this approach to be inappropriate on the facts of this case. The defendant's explanation for the decision to replace Monette was that Monette was on medical leave, unable to perform the job under any circumstances, and that, because only one customer service representative was employed in the building, the need to replace Monette was urgent. Viewed properly, all of these reasons are related to Monette's handicap. In other words, the defendant's own explanation for its action established that it relied on Monette's disabled status to replace him.[14]

This is not to say, however, that the district court improperly awarded summary judgment to the defendant. Under the approach outlined above, Monette is required to show that he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation from the defendant, and Monette bears the initial burden of establishing that the accommodation he seeks is "reasonable." Monette proposes as a possible accommodation (which he claims is reasonable) a requirement that the defendant should have kept him on unpaid medical leave indefinitely until another customer service representative or receptionist position opened up. While it is true that employers may be required, as a reasonable

accommodation, to transfer a disabled employee to a vacant position for which he or she is qualified, employers are under no duty to keep employees on unpaid leave indefinitely until such position opens up. *Cf.* 42 U.S.C. § 12111(9)(A)-(B) (defining "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, [and] reassignment to a *vacant* position") (emphasis added). If, perhaps, an employer knows that a position for which the disabled applicant is qualified will become vacant in a short period of time, the employer may be required to offer the position to the employee. *See* 29 C.F.R. pt. 1630 app. at 407–08 (giving as an example a situation in which an employer knows that a particular position will become vacant within a week). However, employers simply are not required to keep an employee on staff indefinitely in the hope that some position may become available some time in the future. Moreover, employers are not required to create new positions for disabled employees in order to reasonably accommodate the disabled individual. *See Fedro v. Reno,* 21 F.3d 1391, 1394–95 (7th Cir.1994). Accordingly, Monette has failed to establish that his proposed accommodation is a "reasonable" one under the statute.

Monette does not explicitly offer another possible accommodation as an alternative, although he makes a somewhat half-hearted claim that the defendant replaced him "rather quickly." We view this as a claim that the defendant could have "reasonably" accommodated Monette by leaving his position open or perhaps filling it temporarily. This claim must also fail. The defendant offered uncontradicted evidence that only one customer service representative worked in Monette's building, and adequately explained the need to have a customer service repre-

---

**14.** Consider, for example, a situation in which Monette had suffered a somewhat less egregious injury, and he was permanently limited to working four hours per day. Suppose he worked four hours per day for one month, at the end of which the defendants terminated him and replaced him with a new employee. Suppose also that the defendant justifies its decision on the ground that a full-time customer service representative was needed, and Monette was only showing up to work half days, an unacceptable situation for the defendant. This justification would *not* be unre-

lated to Monette's disability. Rather, Monette's disability (which rendered him unable to work full time) is *the reason* he is replaced, although the defendant has couched its explanation in terms of Monette's job performance. Properly analyzed, the dispositive issue in this hypothetical case is whether Monette is "otherwise qualified" despite his disability with a reasonable accommodation from the employer (for example, the defendant might hire another part time employee to work the afternoon shift).

sentative available. No genuine issue of fact exists as to the defendant's need to have someone take over the customer service representative position in light of Monette's absence. Further, because the defendant had no way of knowing when, or even if, Monette would return to work, we think it entirely reasonable that Monette's position was permanently filled in his absence. Monette never expressed a desire to return to work, and in fact applied for permanent disability benefits before returning to work unannounced. On these facts, the defendant can hardly be blamed for assuming that Monette would not be returning to his old job.

Finally, Monette relies on evidence that, on two other occasions, the defendant held an individual's job open while the individual was on medical leave. These facts, according to Monette, indicate that the defendants discriminated against him by not affording him similar treatment. Viewing these facts as evidence that the defendant could have reasonably accommodated Monette by holding his position open, we have already explained why we find this argument unpersuasive as it pertains to Monette's customer service representative position. We note also that the two occasions upon which Monette relies are not similar to his own. In one instance, an employee suffered a heart attack, and was on leave for three months from a management position dissimilar to Monette's customer service representative position. In the other, which occurred after Monette's termination, the defendant was required by law to hold the employee's position open. *See* **Family and Medical Leave Act,** 29 U.S.C. § 2612(a)(1)(D) (requiring employee to furnish employee with twelve weeks of leave during any twelve-month period if the employee's health condition so requires). Neither of these incidents creates an inference that the defendant discriminated against Monette. Arguably, one could draw the opposite inference, namely that the defendant regularly attempted to accommodate temporarily disabled employees whenever possible. However, we need not draw an inference either way. As we have explained, neither of the these employees were similarly situated to Monette.

In sum, Monette failed to propose a "reasonable" accommodation with respect to his claim that the defendant should have kept him on unpaid leave until a position for which Monette was qualified became vacant. Additionally, Monette has failed to create a genuine issue of material fact regarding the defendant's explanation that keeping his position open while Monette was on open-ended disability leave would impose an undue hardship. Accordingly, the district court appropriately awarded summary judgment on Monette's claim.

We turn now to the district court's refusal to allow Monette to file a second amended complaint. The parties do not agree on the appropriate standard of review on this issue. This disagreement apparently stems from some confusion as to the grounds upon which the district court relied in denying Monette's motion to file the amended complaint. Normally, we review a district court's denial of leave to file an amended complaint under an abuse of discretion standard. *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1104 (6th Cir. 1995). However, where the district court's conclusion as to whether to allow an amended complaint rests on a legal conclusion that the amended complaint would not withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6), our review is *de novo.*

It is not immediately apparent whether the district court denied leave to file the amended complaint on the ground that it was untimely filed, or whether the district court relied on its belief that the complaint as amended could not withstand a motion to dismiss. However, because the bulk of the district court's opinion explains that it did not believe Monette's amended complaint would withstand a motion to dismiss, we review the district court's decision *de novo. Martin v. Associated Truck Lines,* 801 F.2d 246, 248 (6th Cir.1986). When considering whether a claim should be dismissed under 12(b)(6), we must accept as true all factual allegations in the complaint, and must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim for relief. *Nishiyama v. Dickson County,*

814 F.2d 277, 278 (6th Cir.1987) (citations omitted).

Monette sought to amend his complaint to assert a claim for retaliatory discharge under Mich. Comp. Laws § 418.301(11), which provides:

A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

Taking the facts as stated in Monette's amended complaint as true, we believe the district court erred in refusing to allow him to file an amended complaint. It may be that Monette will be unable to withstand a motion for summary judgment on this claim, after the parties have taken discovery on the issue. However, because a complaint should be dismissed for failure to state a claim only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Nishiyama,* 814 F.2d at 278, the district court's denial of Monette's motion to amend his complaint must be reversed.

Further, even if we were to view the district court's order on this issue as holding that Monette's motion for leave to file an amended complaint was untimely, the court abused its discretion by failing to inquire into whether allowing the amendment would cause undue prejudice to the defendant. In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court explained the general standard for determining whether a party should be permitted to amend a complaint:

In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. at 230. Thus, leave to file need not be given if the plaintiff seeks to amend the complaint after undue delay, or if allowing the amendment would work an undue prejudice on the defendant. *Priddy v. Edelman,* 883 F.2d 438, 446–47 (6th Cir. 1989). However, the district court made no finding that the amendment would unduly prejudice Electronic Data Systems. Nor did the district court find evidence of a "dilatory motive." Accordingly, we cannot affirm the district court on the ground that Monette's motion for leave to file an amended complaint was untimely.

The judgment of the district court is AFFIRMED IN PART, and REVERSED IN PART, and the case is REMANDED for proceedings in accordance with this opinion.

LIVELY, Circuit Judge, concurring.

I concur in the result reached by the majority, but do not join in the entire opinion. In my view, the record clearly shows that EDS laid Monette off and ultimately terminated him because of his disability. This, then, was direct evidence and no discussion is required of the burden of proof when a plaintiff seeks to show by indirect evidence that the reason for the employer's adverse action was his handicap. The plaintiff having shown by direct evidence that he was terminated because of his disability, he was still required to show that he was "otherwise qualified." Although the plaintiff had ample opportunity to demonstrate that he was otherwise qualified, the record reveals that he failed to do so. Furthermore, I agree that the 37–day paid period represented a reasonable accommodation, and that the district court erred in denying the plaintiff's motion to file an amended complaint.