**Harrison C. LANCE, Jr., Plaintiff,**

v.

**UNIVERSITY OF TENNESSEE, Defendant.**

**No. 3:98–CV–037.**

United States District Court, E.D. Tennessee, at Knoxville.

May 5, 1999.

Stephen T. Hyder, Knoxville, TN, for plaintiff.

Ronald C. Leadbetter, University of Tennessee, Office of General Counsel, Knoxville, TN, for defendant.

### MEMORANDUM OPINION

JARVIS, District Judge.

This is an action brought pursuant to the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12101, *et seq.* It was tried to a jury beginning on April 27, 1999. Following the close of plaintiff's proof, defendant's motion for judgment as a matter of law was granted pursuant to Rule 50(a), Federal Rules of Civil Procedure. The court's reasoning is set out below.

### I.

### *Factual Background*

Plaintiff Harrison Lance was hired by the defendant University of Tennessee as a carpenter in May 1985. Initially, his job involved general campus maintenance. Later, however, in the last two years of his employment, plaintiff was a "short order" carpenter and his duties involved minor repair work such as hanging doors, repairing furniture, and hanging and maintaining directories. As a short order carpenter, pursuant to the practices of the Physical Plant for which plaintiff worked, the carpenters performing these duties worked on a team of at least two persons who helped or assisted each other. In May 1995, plaintiff requested leave from the University due to pancreatitis. He was granted leave for a 12–week period beginning May 23, 1995, pursuant to the requirements of the Family and Medical Leave Act

(FMLA). He was approved by his physician to return to work on August 10, 1995.

However, on July 29, 1995, while plaintiff was still on FMLA leave, he suffered a severe hand injury while operating a skill saw. The result of this injury was that the little finger of his left hand was completely severed, and surgical reattachment was not possible. He also suffered damage to the other fingers of his left hand, particularly the fourth finger, which was also almost completely severed.

Approximately one week after this accident plaintiff contacted his supervisor, George Bull, at the Physical Plant to inquire about returning to work. Plaintiff was restricted from working at that time by his treating orthopedic surgeon, Dr. Sam Marcy. In a note dated August 14, 1995, Dr. Marcy stated the following:

This is to certify that Harrison Lance is under my care for the following:

Unable to determine the condition at present, 6 weeks or when discharged at this point. Follow up appt. 8–28–95.

Plaintiff's Ex. 6. Plaintiff presented this note to Mr. Bull.

On August 15, 1995, Mr. Bull sent the following letter to the plaintiff:

Dear Mr. Lance:

We were certainly sorry to hear about the personal injuries that you sustained during your FML (Family Medical Leave) for personal illness. However, you should understand that your FML expires at the end of the work day on August 15, 1995, and you are not eligible for any additional leave for this purpose for the remainder of this calendar year. Since this department is already severely understaffed, we are not in a position to grant any other type of leave of absence.

Therefore, unless you are able to return to work by August 22, 1995, without restrictions, we will have no choice but to fill your position with someone who is able to work. . . .

Joint Ex. 1. Two days later, on August 17, 1995, the Executive Director of the Physical Plant, John C. Parker, essentially modified Mr. Bull's letter with the following letter:

Dear Mr. Lance:

We have reviewed our August 15 letter to you. Rather than asking you to return to work by August 22, we are instead requesting that you provide a doctor's statement that identifies the disability in question, its relationship to your ability to do your carpenter job, and any suggestions the doctor has concerning possible accommodations necessary. Upon receipt of this statement, we will decide whether additional leave will be granted.

Joint Ex. 2.

When a statement from Dr. Marcy was not immediately forthcoming, defendant contacted Dr. Marcy's office regarding when the plaintiff would be able to return to work. Plaintiff was terminated from his employment with the University on August 30, 1995, by a letter to Mr. Lance from Mr. Bull. The letter stated:

Dear Mr. Lance:

We have talked with Dr. Marcy's office and have been informed that you are to continue to be off from work until at least September 28, 1995, at which time a follow-up exam may determine your possible return to work.

You have exhausted all available paid and unpaid leave, and any possible return to work is well outside the boundaries of additional unpaid leave we could provide. Since this department is already severely understaffed, we are not in a position to grant any additional time off from work. Therefore, your employment with the Physical Plant at the University of Tennessee is terminated effective Thursday, August 31, 1995.

Plaintiff's Ex. 11.

Dr. Marcy sent a letter to Mr. Parker dated August 31, 1995, which described the plaintiff's ability to return to work. That letter provided as follows:

Dear Mr. Parker:

I have been treating H. Charles Lance of Norris Freeway for a very severe injury to his left hand which occurred on 7–29–95. This is a devastating hand injury with a traumatic amputation of the little finger, major nerve, vessel and tendon injury to ring, long and index fingers. His pain has finally abated after four weeks. He is in therapy but he has no ability to do carpenter type work at this time.

It is probably going to be three months from the date of injury before he is able to return to active use of his hand in a carpentry position. Possibly as early as October he would be able to return to work but it would probably be more likely early November before his hand is mobile and strong enough to be a helping hand for a carpenter. He will have a great deal of cold intolerance for the winter. He is presently undergoing Occupational Therapy. His ability to work as a driver is not safe now in an industrial situation. He might be able to do that at the end of September or first of October.

I certainly can't guarantee that he will be able to do full carpenter work at any time in the future however.

Joint Ex. 3.

On September 25, 1995, plaintiff was released by Dr. Marcy to return to work on light duty. Dr. Marcy noted the following:

This is to certify that Harrison Lance is under my care for the following: He may return to work 9/25/95 light duty. Right hand grip only. No left hand lifting or gripping. O.K. to drive follow-up 10/23/95.

Plaintiff's Ex. 7. On October 30, 1995, two months after plaintiff's termination, Dr. Marcy gave him a full release to return to work.

When Dr. Marcy later gave his deposition, he admitted that he had at first misunderstood the nature of plaintiff's carpentry job. Dr. Marcy explained in his deposition how that misunderstanding might have affected his opinion:

Q. Ok. I want to go back just a little bit, Dr. Marcy, and ask you about when Mr. Lance advised you of the nature of his job as a maintenance carpenter primarily adjusting doors, hanging bulletin boards and pictures. Did that corrected understanding in any way change your opinion about Mr. Lance's ability to do his former job?

A. Certainly.

Q. Ok. How did it change?

A. Well, that is less physically demanding than I was anticipating than handling two by eights and two by sixes, and just heavier carpentry work that I was anticipating.

However, when you adjust doors and such you will still need to have both hands. And for a good while he was having significant pain. And he had incompletely healed wounds and such that it was still not reasonable that he should be able to return to his usual customary work until about the times that we let him go.

Q. Along those same lines, did this new understanding change your opinion about when he could return to work?

A. He has a lot higher ability to return to work, to that type work than to heavier carpentry work.

Q. Do you think if you had known before that date what the true nature of his job was you would have perhaps given him an earlier return-to-work date?

A. I would have given him the same light duty return-to-work date at the first chance that I gave it to him.

Q. Ok.

A. I don't think I would have been able to let him go any earlier. I may have considered his job as a light-duty job and allowed him to return to that.

But if he were to return to a full carpentry job I wouldn't expect him to do a full carpentry job, assuming full carpentry to be using saws and ham-

mers and planers. And what do you call the little boxes that you cut angles with?

MR. LEDBETTER: A miter saw.

THE WITNESS: Miter saws and that kind of stuff, I would not have expected him to be able to do that.

Plaintiff's Ex. 16 at pp. 25–26.

## II.

### Legal Standard

The ADA prohibits an employer from discriminating against "a qualified individual with a disability" because of the disability. 42 U.S.C. § 12112(a). In order to establish a case under the ADA, a plaintiff must prove that

(1) [He] is a disabled person within the meaning of the Act,

(2) That [he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation, and

(3) That [he] suffered an adverse employment decision because of [his] disability.

*McKay v. Toyota Motor Manufacturing, USA, Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). 29 C.F.R. § 1630.2(*o*)(2) explains that

(2) Reasonable accommodation may include but is not limited to

\*　　\*　　\*　　\*　　\*　　\*

(ii) Job restructuring; part-time or modified work schedule; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

The Appendix to 29 C.F.R. Part 1630 regarding § 1630.2(*o*) goes on to explain that

Part 1630 lists examples, specified in Title I of the ADA, of the most common types of accommodation that an employer or other covered entity may be required to provide. There are any number of other specific accommodations that may be appropriate for a particular situation but are not specifically mentioned in this listing. This listing is not intended to be exhaustive of accommodation possibilities. For example, other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment, ...

The United States Court of Appeals for the Sixth Circuit has observed that the disabled individual bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Monette v. Electronic Data Systems Corporation*, 90 F.3d 1173, 1183 (6th Cir.1996). That court has also observed that in determining whether a plaintiff is a "qualified individual with a disability", the relevant time is the time of the alleged discriminatory act. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 884 (6th Cir.1996).

The courts have also recognized that an allowance of unpaid leave time for medical care or treatment may constitute a reasonable accommodation. *See Hudson v. MCI Telecommunications Corporation*, 87 F.3d 1167, 1169 (10th Cir.1996). However, an indefinite unpaid leave is not a reasonable accommodation where the plaintiff fails to present evidence of the expected duration of his impairment. *Id.; see also Monette*, 90 F.3d at 1187 (employers are under no duty to keep employees on unpaid leave until the employee is able to return to work).

Initially, the court notes that there is a substantial question with regard to whether plaintiff was actually "disabled" within the meaning of the Act. However, even assuming that plaintiff's proof satisfies this threshold element, plaintiff cannot meet the second element for a claim under the ADA. The court finds that, based on the uncontroverted facts, the only conclusion that a reasonable jury could reach is that at the time of the plaintiff's termination plaintiff had not suggested an objectively reasonable accommodation which would

qualify him to perform the essential functions of his job. At the time plaintiff was terminated on August 30, 1995, plaintiff had exhausted his leave under the FMLA and had not been released to return to work by Dr. Marcy. In fact, it is uncontradicted that plaintiff's employer had contacted Dr. Marcy's office and been informed that plaintiff would have to be off work "until at least September 28, 1995, at which time a follow-up exam may determine [plaintiff's] possible return to work." The indefiniteness of plaintiff's possible return to work is born out by the August 31, 1995, letter by Dr. Marcy to Mr. Parker. Dr. Marcy suggests in that letter that plaintiff had no ability to do carpentry work at that time; that it was probably going to be three months from the date of the injury before he would be able to actively use his hand in a carpentry position; and that possibly it could be as early as October but more likely early November before plaintiff's hand would be mobile and strong enough to be a helping hand for a carpenter. Dr. Marcy also examined whether plaintiff might be able to work as a driver in an industrial situation and found that he could not at that time, but "might be able to do that at the end of September or first of October." Finally, Dr. Marcy concluded that he "certainly [couldn't] guarantee that he will be able to do full carpenter work at any time in the future however." Although in his deposition Dr. Marcy later admitted that he was under a misunderstanding regarding the type of carpentry job which the plaintiff had, there was no evidence that the defendant misled Dr. Marcy in any way or was responsible for his misunderstanding.

Under the circumstances, I conclude that although the plaintiff suggested an accommodation to the defendant, a jury could not reasonably find that he suggested a reasonable accommodation. Based on what the plaintiff's supervisors had learned from Dr. Marcy, they had learned that plaintiff might be able to return in October or November, but that was not certain, and that Dr. Marcy could not guarantee that plaintiff would ever be able to do full carpentry work in the future. Accordingly, it was reasonable for the defendant to hire someone to replace the plaintiff, particularly in light of the shortage of carpentry workers in the Physical Plant. Plaintiff has therefore failed to produce sufficient evidence on an essential element of his claim; that is, that he was a qualified individual who could perform essential functions of his job with or without accommodation at the time of his termination.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion for judgment as a matter of law, made at the close of plaintiff's proof, is hereby GRANTED, and this action is DISMISSED.