**UNITED STATES of America and the State of Michigan, Plaintiffs,**

v.

**The CITY OF DETROIT, MICHIGAN, Defendant,**

and

**The Greater Detroit Chamber of Commerce, Intervenor-Defendant.**

No. 89–72937.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 1, 1996.

Pater Caplan, Asst. U.S. Attorney, Detroit, MI, John Scherbarth, Asst. Atty. General, State of Michigan Environmental Protection Div., Lansing, MI, Thomas Carroll, U.S. Dept. of Justice, Environmental & Natural Resources Div., Environmental Enforcement Section, Washington, D.C., for plaintiffs.

Beth S. Gotthelf, Seyburn, Kahn, et al., Southfield, MI, Devin S. Schindler, Warner, Norcross & Judd, Grand Rapids, MI, Avery K. Williams, Cooper, Fink & Zausmer, Detroit, MI, for defendant.

### AMENDMENT

*TO OPINION AND ORDER DATED SEPTEMBER 30, 1996*

FEIKENS, District Judge.

The City of Detroit ("City") moves for summary judgment in a suit brought against

it by the United States and the State of Michigan ("State"), for violations of the Clean Water Act in the discharge of industrial waste. I grant summary judgment for defendant City. Due to this holding, it is unnecessary to decide defendant's claim of collateral estoppel on one count of the complaint or defendant's motion to quash subpoenas.

## I. *Background*

This is a suit to enforce provisions of the Federal Water Pollution Control Act Amendments of 1972, commonly known as the Clean Water Act (CWA), which govern the discharge of industrial sewage by Publicly Owned Treatment Works (POTWs). The CWA permits the discharge of industrial waste only as authorized by a National Pollutant Discharge Elimination System (NPDES) permit from the U.S. Environmental Protection Agency (EPA). 33 U.S.C. § 1311. The CWA provides procedures whereby the EPA may delegate to a state authority to administer an NPDES permit program within the state, giving the state enforcement capacity concurrent with the federal government. 33 U.S.C. §. 1342(b), (h) and (i). Such authority was delegated to Michigan in 1973, and in 1983 Michigan was granted permission to administer an NPDES pretreatment program as provided by 40 C.F.R. 403.10 (1995).

The City of Detroit operates a POTW which treats industrial sewage from various communities in and outside of Detroit. The State granted the POTW an NPDES permit ("the permit") in 1983. As required by the permit and the CWA, the City developed an Industrial Pretreatment Program (IPP, or "program"), and the State approved the IPP in September 1985. This IPP governs industrial sewage discharge by POTW users in and outside of Detroit's jurisdiction.

Once an IPP is included within an NPDES permit, the IPP becomes binding on the POTW operator. In this case, the 1983 permit included a provision that the City would "[i]mplement and enforce" its IPP within 30 days of State approval, and that the permit

would be modified to incorporate the IPP in the permit. However, the parties disagreed over the terms of permit modification. Detroit never accepted conditions which the State proposed in 1985 and 1986. When the State issued a revised permit in 1989, the City immediately challenged its terms and the 1983 permit was never modified to include the IPP.[1] Both sides acknowledge that only the 1983 permit is binding.

In 1989 the U.S. Government and State of Michigan filed the instant action, claiming that the City had violated the terms of its NPDES permit by failing to implement its IPP. Seven years of negotiation to resolve this dispute have ensued, which failed. The City now seeks summary judgment.

## II. *Standard of Review*

A motion for summary judgment will be granted only if the court finds "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the facts in the light most favorable to the non-moving party. *Monette v. Electronic Data Systems*, 90 F.3d 1173 (6th Cir.1996), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## III. *Analysis*

The Clean Water Act provides for the EPA Administrator, or a state acting under authority delegated by the Administrator, to issue NPDES permits for the discharge of pollutants by a POTW. 33 U.S.C. § 1342. Discharge of pollutants without a permit is a violation of the CWA. 33 U.S.C. § 1311. Regulations require that POTWs above a certain size develop a pretreatment program and secure approval. 40 C.F.R. § 403.8(a) and (b) (1995). It is undisputed that these requirements apply to the POTW operated by Detroit, and that Detroit developed its Industrial Pretreatment Program and secured approval in conformance with these requirements.

---

1. Pursuant to applicable law, the permit remains in effect until a final decision on a permit renewal application is issued.

Plaintiffs allege that the City violated the terms of its permit by failing to comply with several provisions of the IPP. These include (1) failure to timely establish a comprehensive electronic data management system (EDMS) to inventory, identify and monitor all industries discharging wastewater, (2) failure to issue permits to all industrial users, (3) failure to publish a list of significant violators, (4) failure to release public information to the public, (5) failure to screen monitoring data for all potential violations, (6) failure to initiate enforcement actions against violators, and (7) failure to escalate enforcement action in response to continuing violations. As a result of these alleged violations, plaintiffs seek civil penalties up to $10,000 per day for each violation prior to February 4, 1987 and $25,000 per day for each violation between February 4, 1987 and the date of judgment, plus costs.

Defendants argue that because the IPP was never incorporated into the permit, plaintiffs may not seek to enforce the terms of the IPP.

The dispute centers around a regulation stating that "the POTW's NPDES Permit will be re-issued or modified by the NPDES State or EPA, respectively, *to incorporate the approved Program conditions as enforceable conditions of the permit.*" 40 C.F.R. § 403.8(c) (1995) (emphasis added). Both sides agree that Detroit's permit was never modified to incorporate the IPP "program conditions." Defendants argue that the regulatory language means an IPP is not an "enforceable condition" until it is incorporated within a permit. Plaintiffs maintain that while IPP inclusion in a permit is a preferable means of enforcing the IPP, the quoted language does not exclude enforcement independently of the permit. Additionally, plaintiffs assert that since, unlike most permits, the City's permit contains a commitment to "[i]mplement and enforce" the IPP within one month after its 1985 approval, the permit itself anticipates and allows enforcement of the IPP.[2]

While the language of 40 C.F.R. § 403.8(c) is somewhat indirect, by requiring the incorporation of program conditions as "enforceable conditions of the permit," it clearly implies that a program (such as the IPP) is not otherwise enforceable. This is buttressed by the framework of the permit approval process, which provides for an opportunity for public notice, comment and hearing. 40 C.F.R. §§ 122.62 and 124 (1995). Enforceability is thus linked to the ability of the public to comment on program conditions before they are incorporated into the permit.

Plaintiffs attempt to show that the CWA authorizes enforcement of the IPP independently of the permit. They point to Section 1319(d), which imposes civil penalties against

[a]ny person who violates section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator, or by a State ... *or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or (b)(8) of this title.*

33 U.S.C. § 1319(d) (emphasis added). Thus they interpret the law as permitting enforcement under (1) substantive provisions of the CWA; (2) a condition in a permit, or, most relevant for this discussion; (3) a "requirement imposed in a pretreatment program...."

The text of section 1319(d) does not support plaintiffs' interpretation. Enforceability of "any requirement imposed in a pretreatment programs" is limited to those programs approved under Section 1342(a)(3) or (b)(8), the very sections governing the issuance of permits by federal or state authorities. In fact, Section 1342(b)(8) requires the Administrator to delegate NPDES permit administration to a petitioning state, unless that state does not have adequate authority "to ensure that any permit for discharge from a publicly owned treatment work includes [a pretreatment program] and a program to assure compliance with such pretreatment

---

2. The City additionally argues that federal regulatory guidelines are too vague to be enforced without violating due process. However, plaintiffs state that they do not allege violations of

EPA pretreatment regulations apart from the IPP, so the vagueness or enforceability of those regulations is not at issue here.

standards by each source...." 33 U.S.C. § 1342(b)(8). Section 1342(a)(3) subjects federal permit programs to the same terms, conditions, and requirements as state permit programs. 33 U.S.C. § 1342(a)(3). Thus the provisions cited by plaintiffs explicitly call for federal or state administrators to incorporate the conditions of pretreatment programs into permits issued to POTWs.

In commentary to proposed changes to 40 C.F.R. 403, which were open until September 30, 1996, the EPA acknowledges that:

> the Approved Program needs to remain in the permit because Part 403 standing alone may not be sufficiently specific to create objective, enforceable requirements that could be directly implemented by (and enforced against) the POTW as a permit condition. EPA is interested in comments on how it might implement the pretreatment regulations directly without the need to incorporate the entire approved programs in POTW permits. EPA is particularly interested in comments on how the regulations might be clarified or made more specific so that they could be directly implemented by and enforced against the POTWs.

61 Fed.Reg. 39806 (1996) (to be codified at 40 C.F.R. § 403).

There appears to be no case law directly on point. Neither of the two cases cited by plaintiffs supports enforcement of a pretreatment program without incorporation into a permit. In one case, a court granted summary judgment to plaintiffs, federal and state governments, against a municipal operator of a POTW which failed to develop a pretreatment program as required by its NPDES permit. *United States v. City of Lafayette,* No. L 85–62, 24 ERC (BNA) 1226, 1985 WL 6027 (N.D.Ind. Dec. 5, 1985). That case did not enforce the terms of the pretreatment program; rather, it simply held the city liable for failing to submit an approvable pretreatment program. *Id.* And contrary to plaintiffs' reading of *United States v. City of Beaumont,* 786 F.Supp. 634 (E.D.Tex.1992), that case enforced a pretreatment program specifically because it was found to have been incorporated into a modified NPDES permit.

Other cases have denied enforcement of a condition not included in a permit, *McClellan Ecological Seepage v. Weinberger,* 707 F.Supp. 1182 (E.D.Cal.1988), and have enforced conditions which were specifically found to have been included in permits. *Sierra Club v. Simkins Industries, Inc.,* 847 F.2d 1109, 1115 (4th Cir.1988); *Northwest Environmental Advocates v. Portland,* 56 F.3d 979, 989 n. 11 (9th Cir.1995).

Plaintiffs maintain that because the defendant's 1983 permit contains a commitment to "[i]mplement and enforce" the IPP within one month after approval, the IPP may be enforced as a condition of the permit. It is hard to see how the permit could bind the City to a pretreatment program that had not yet been developed or received public comment at the time of the permit's adoption. In fact, the permit anticipates its own future modification in order to incorporate the pretreatment program upon approval.

The protracted negotiations between the parties belie the notion that the IPP as approved in 1985 was comprehensive enough to be binding. When the IPP was approved in 1985, the State gave the City a set of requirements to be incorporated into a modified permit, which were not acceptable to the City. In 1986, the State again attempted to impose requirements for permit modification, which the City again rejected. A 1988 letter from the State acknowledges that the permit was never modified to include these proposed conditions. When the State issued a revised permit in 1989, this also included terms objectionable to the City, which immediately challenged the modification. This lawsuit followed.

Although the IPP was never incorporated into the permit, the City has substantially enforced its terms. There have not been significant violations of pollution standards during the past seven years that this enforcement action has been ongoing.[3] Neither party argues that Detroit has authority to compel outlying jurisdictions to pass ordinances to enable Detroit to exercise delegated authority over POTW users in those jurisdictions; the lack of agreement on final permit

---

3. Under the companion case rule in the Eastern District of Michigan, any case seeking enforce-

ment of the CWA provisions at issue in this case would have been assigned to this court.

modification has hindered this process. Nevertheless, such adoption ordinances are now in place in all of the outlying communities. Detroit cannot solely be blamed for the delay in passage of these ordinances and should not be assessed penalties for events it did not control.

If plaintiffs would hold the City to every technical requirement of its pretreatment program, then they themselves must be held to the letter of the law. And the law plainly states that a pretreatment program may only be enforced when incorporated into a permit.

### Conclusion

Because the language of the Clean Water Act clearly requires adoption of a pretreatment program into a permit before the program can be enforced, and because plaintiffs have failed to point to any statute or regulation permitting enforcement independent of the permit, I grant summary judgment for defendant. This holding disposes of plaintiffs' allegation that the City failed to release public information as required by its pretreatment program, so it is unnecessary to address the City's argument that this claim is estopped by a previous suit by the Public Interest Research Group of Michigan. It is also unnecessary to decide the merits of the City's motion to quash subpoenas.

IT IS SO ORDERED.