**Edward L. SMITH, Plaintiff,**

v.

**The QUIKRETE COMPANIES, INC., Defendant.**

**CIVIL ACTION NO. 3:00CV–108–H.**

United States District Court,
W.D. Kentucky,
At Louisville.

May 21, 2002.

Bixler W. Howland, Michael Anthony Augustus, Louisville, KY, for Edward L. Smith.

Michael K. Kirk, Gordon A. Rowe, Jr., Clarence A. Wilbon, Wyatt, Tarrant & Combs, Louisville, KY, for The Quikrete Companies, Inc.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Defendant, The Quikrete Companies, Inc. ("Quikrete"), has moved for summary judgment on Plaintiff's claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* This case raises many of the issues which make the ADA so difficult to decipher for lawyers, judges and employers. The Court faces several delicate procedural issues as well as considerations which go to the heart of the ADA's purposes and scope. After resolving several of those issues, the Court finds numerous disputed material issues to require jury consideration.

### I.

Quikrete, a business engaged in the manufacture and distribution of concrete mixes, purchased Smith's employer, B.J. Distributors, in 1994. B.J. Distributors had employed Smith for about two years as a driver, whose job was to haul and deliver bags of cement to customers. Soon after Quikrete bought out B.J. Distributors, it promoted Smith to a supervisory position, in which he scheduled trucks and hired and trained drivers. By all ac-

counts, Smith was an able and well-regarded employee.

On June 30, 1998, Smith experienced severe chest pains, and soon was admitted to a hospital. A cardiologist, Dr. Wayne Shugoll, diagnosed severe, inoperable arterial blockage around Smith's heart. Shugoll prescribed medication, instructed Smith not to lift objects heavier than twenty-five pounds, and advised him to stop smoking, lose weight, and avoid physically strenuous activity. Smith returned to work later that summer. In March 1999, he again checked into a hospital with chest pains, but was discharged after four days and returned to work.

Upon Smith's return, his supervisor, Lee Andrews, informed him that Quikrete needed him to give up his supervisory position and revert to driving a delivery truck. Smith did so, with no drop in pay or benefits. Almost immediately after starting, Smith was written up twice in four days for presenting a poor attitude, once upon a customer's complaint, then upon the complaint of a co-worker. These were the first times Quikrete had ever admonished him.

On April 7, 1999, Andrews issued a memo to all drivers which stated that all truckloads must be tarped down. This announcement was consistent with company policy as stated in the employee handbook, but the policy previously had been enforced only in inclement weather. Generally, Quikrete had stretch- or shrink-wrapped loads instead. The tarps weighed between 75–100 pounds, a weight well in excess of Smith's lifting restrictions. Smith approached Andrews and told him that he could not lift the tarps, but that he could roll and affix them if the forklift used to load the cement bags were used to hoist the tarps onto his truck. Andrews refused this accommodation, and responded that the policy left Smith "without a job." Andrews proposed that Smith instead split his work time between supervisory office duties and driving a tanker truck. Smith stated that he would be unable to operate the truck because fueling it required physical exertion beyond his limited capability. Quikrete terminated Smith on April 12.

Since termination by Quikrete, Smith and his wife have made a living running their own business, B & E Trucking Company, Inc., which transports lumber. As president of the company, Smith functions primarily in a supervisory capacity, but occasionally as a driver. A forklift is used for all loading of the trucks.

While applying these allegations and other evidence to the pending motions, the Court views the facts in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II.

The ADA prohibits covered entities from discriminating against any "qualified individual with a disability" in terms of employment. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines "disability" as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). To state a discrimination claim under the ADA, a plaintiff must establish that: "1) he is an individual with a disability; 2) he is 'otherwise quali-

fied' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996) (citation omitted).

■ In his complaint, Smith alleged that his heart condition substantially limits him in the major life activity of lifting; that, nevertheless, he is qualified to perform the requirements of his job; and that Quikrete fired him solely because of his disability. In his response to Quikrete's motion for summary judgment, Smith augmented his claim by arguing that his heart condition substantially limits him in the major life activity of working, and, alternatively, that Quikrete terminated him because it mistakenly regarded him as substantially limited in working. Defendants object to Plaintiff's modification of his legal theory in his response to its motion for summary judgment, arguing that the requirements of notice pleading do not permit "trial by ambush."

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint include "a short and plain statement of the claim," a rule which exists to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, while Plaintiff alleged only one substantially affected life activity in his complaint, he stated that he is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(2). This subsection encompasses claims that a plaintiff has a substantially limiting impairment, has a record of such an impairment, or is regarded as having such an impairment. Thus, Plaintiff's pleading was broad enough to put Defendant on fair notice.

Further, Plaintiff's discovery responses put Defendant on notice that Plaintiff would not confine his legal theory to a claim that he is substantially limited in lifting. As the Supreme Court remarked in *Conley,* simple notice pleading works in conjunction with "the liberal opportunity for discovery and the other pretrial procedures established by the [Federal] Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Id.* at 47–48, 78 S.Ct. 99 (citation omitted). *See also Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir.2001) (holding that, in the ADA context, "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading.")

The Court concludes, therefore, that it is fair in these circumstances to evaluate all of Plaintiff's evidence and accompanying legal theories.

### III.

■ Defendant also has moved to exclude all testimony from Robert Teill, a vocational expert whose opinions are key to Plaintiff's claim that his heart condition substantially limits him in working. Plaintiff disclosed Teill as an expert witness in February 2001, advising Defendant of Teill's address, profession, and curriculum vitae, and the intended subject matter of Teill's testimony: namely, "the plaintiff's inability to perform the essential functions of the job from which the plaintiff was excluded at Quikrete" and "the impact on Mr. Smith's employability of his lifting restrictions." In November 2001, before his scheduled deposition, Defendant requested a copy of Teill's expert report. Plaintiff's counsel responded that he would forward a copy of the report as soon as he received it from Teill. Plaintiff's counsel did not receive the report from Teill—who claims to have been seriously ill in late 2001 and

early 2002—until February 12, 2002, and submitted it to Defendant on February 18. The Court's ordered period of discovery ended on December 29, 2001.

The Sixth Circuit considers four factors when reviewing such a sanction under Rule 37. "The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir.1997) (citations omitted). Defendant's chief argument appears to be that Plaintiff's failure to meet the discovery deadline has inconvenienced its preparation for trial, set to commence on June 17, 2002.

The Court finds that exclusion of Teill's testimony would be an unduly harsh sanction. It does not appear from the record that Plaintiff is to blame for Teill's delay in processing and submitting his report; nor does it appear that the content of Teill's report took Defendant completely by surprise, given that Teill's report addresses precisely the subject matter stated in Plaintiff's Rule 26 disclosure. Further, Teill has offered to make himself available for deposition. The Court will take Teill's report into account in its consideration of the pending motion.

## IV.

■ To state an ADA claim a plaintiff must allege that a physical or mental impairment substantially limits him in one or more major life activities. *See* 42 U.S.C. § 12102(2). The ADA does not define "substantially limits" or "major life activity," but empowers the Equal Employment Opportunity Commission ("EEOC") to promulgate regulations[1] to offer some guidance. *See* 42 U.S.C. § 12116. EEOC guidelines state that an individual is substantially limited if:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). These guidelines advise courts adjudging substantial limitation to consider these factors:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The Code of Federal Regulations defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Lifting is absent from this list, although it appears in the appendix to this regulation. 29 C.F.R. pt. 1630, app. at 353. In any event, "[a]s the use of the term 'such as' confirms, the list is illustrative, not exhaustive." *Bragdon v. Abbott,*

---

1. EEOC guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citation omitted).

524 U.S. 624, 639, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

The Supreme Court of the United States pointedly has declined to decide whether lifting can be a major life activity under the ADA. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002). Some Circuit Courts of Appeals have held explicitly that lifting is a major life activity. *See Gillen v. Fallon Ambulance Serv., Inc.,* 283 F.3d 11, 16 (1st Cir.2002); *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir.2001). Other circuit courts have assumed *arguendo* that lifting may be a major life activity without delving too deeply into the question. *See, e.g., Mellon v. Federal Express Corp.,* 239 F.3d 954, 956–57 (8th Cir.2001); *Pryor v. Trane Co.,* 138 F.3d 1024, 1026–27 (5th Cir.1998); *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 349 (4th Cir. 1996). Uniformly, however, courts seem reluctant to approve disability-in-lifting claims based only upon a general restriction on lifting heavy objects. Some have noted that an inability to lift heavy objects cannot be a *per se* disability under the ADA because "a capacity to perform heavy lifting is not a trait shared by the majority of the population." *Gillen,* 283 F.3d at 19; *see also Marinelli v. City of Erie,* 216 F.3d 354, 363–64 (3d Cir.2000) (same rationale); *Thompson v. Holy Family Hospital,* 121 F.3d 537, 539–40 (9th Cir.1997) (same). Other circuits have rejected such claims because the plaintiffs were unable to produce proof that a weight-lifting restriction substantially limits them. *See, e.g., Lusk,* 238 F.3d at 1240–41; *Pryor,* 138 F.3d at 1026–27; *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996).

The Sixth Circuit has said that the list of major life activities at 29 C.F.R. § 1630.2(i) "arguably could include lifting." *Henderson v. Ardco, Inc.,* 247 F.3d 645, 650 (6th Cir.2001). However, it has never explained precisely what a plaintiff must show to establish a disability in lifting, apart from proof that the lifting disability is permanent. *See Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 937–38 (6th Cir.2000); *Linser v. Ohio Dept. of Mental Health,* No. 99–3887, 2000 U.S.App. LEXIS 25644, at *10–*11, 2000 WL 1529809 at *3 (6th Cir. Oct. 6, 2000). It has affirmed a district court's decision that, as a matter of law, a 35–pound lifting restriction does not substantially limit the major life activity of lifting. *See Doren v. Battle Creek Health Sys.,* 1998 U.S. Dist. LEXIS 9450, No. 4:97–CV–27, at *17–*18, 1998 WL 689956 (W.D. Mich. June 5, 1998), *aff'd,* 187 F.3d 595 (6th Cir.1999).[2]

■ The Court concludes that an inability to lift heavy objects is not a *per se* disability within the meaning of the ADA. *See, e.g., Williams,* 122 S.Ct. at 691 ("If Congress intended everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particularly difficult manual task to qualify as disabled, the number of disabled Americans would surely have been much higher.") To be a disability under the ADA, an impairment must substantially limit an activity which is "of central importance in daily life." *Id.* A lifting restriction of twenty-five pounds simply does not meet that criterion.

## V.

■ Nevertheless, based upon the same evidence, Plaintiff argues that he is limited in the major life activity of working. The

---

**2.** The Sixth Circuit has more often dealt with lifting restrictions in the context of disability-in-working claims. *See, e.g., Henderson,* 247 F.3d at 650–54. The Court will address, in Part V, *infra,* Plaintiff's claim that a lifting restriction disables him from working.

EEOC's guidelines state that, with respect to the major life activity of working:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). Plaintiff argues that, because he is 55 years old and has only a high school education and a limited array of skills, a lifting restriction substantially limits him from working. He offers as evidence the aforementioned findings of vocational consultant Robert Teill, who calculated Plaintiff's occupational loss to be between 30 and 75 percent, and most likely within the range of 40 to 45 percent.

The Sixth Circuit has held that a lifting restriction substantially limits an individual in working if it forecloses the majority of employment options available to a person of limited education and skill. *See Burns v. Coca–Cola Enterprises*, 222 F.3d 247, 253–56 (6th Cir.2000). In *Burns*, the Court affirmed a district court's conclusion that a plaintiff was substantially limited in working due to a back injury which precluded him from performing at least half the jobs he was qualified to perform by virtue of his limited education and experience. The Court contrasted Burns with the plaintiff in *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369 (6th Cir. 1997), who was a 24–year–old woman in the process of obtaining her teaching certification and was qualified to perform a variety of jobs that did not require lifting. *See Burns*, 222 F.3d at 253–54.

In the instant case, Plaintiff gained experience in hiring, training, and supervision while employed at Quikrete and has found work in the industry. Plaintiff and his wife operate their own trucking company, with Plaintiff serving in a supervisory role. In this sense, Plaintiff's circumstances are analogous to those in *Burns*. However, as *Burns* states, the fact that Plaintiff currently works does not preclude him from claiming disability status. *See id.* at 255 ("an employer cannot avoid liability by showing that the employee is still generally capable of doing some economically valuable work in the national economy."); *but see Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593 (6th Cir.2002) (affirming district court finding that plaintiff was not substantially limited in working because he had found identical work after termination and worked continuously). Here, the work Plaintiff found is not identical, and Plaintiff presents evidence that he is precluded from about half the jobs formerly available to him. This is enough evidence for a reasonable jury to consider a disability under the Sixth Circuit standard.

### VI.

■ Defendant also seeks summary judgment on Plaintiff's claim that Quikrete terminated him because it regarded him as substantially limited in his ability to work. *See* 42 U.S.C. § 12102(2)(C). As the Supreme Court observed in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999):

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially

limiting impairment when, in fact, the impairment is not so limiting. *Id.* at 489, 119 S.Ct. 2139. Plaintiff concedes that he has a physical impairment, so he may state a claim under 42 U.S.C. § 12102(2)(C) only if Quikrete mistakenly believed that his heart condition substantially limits him in working. As where Plaintiff alleges he *actually* is substantially limited in working, "to be *regarded as* substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (emphasis added). *See also Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir.2001) ("Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs.")

The Sixth Circuit has said that if a plaintiff offers evidence sufficient to pose a genuine factual dispute as to whether his employer mistakenly regarded him as unable to work, it is a jury question how broad a range of jobs the employer regarded the employee as being unable to perform. In *Ross*, the Sixth Circuit noted that, under the ADA's regarded-as prong, "membership in the protected class becomes a question of [the employer's] intent," and observed that the question of an employer's motive is one "rarely susceptible to resolution at the summary judgment stage." *Id.* at 706. The Sixth Circuit recognized the steep challenge a plaintiff faces in proving that his employer regarded him as substantially limited in working:

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult. Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute. Whether Ross is such a plaintiff lies in the question of whether Campbell Soup Co. regarded him as substantially limited from performing a broad class of jobs. In cases such as this one, where there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into whether the employer engaged in unlawful discrimination is especially acute.

*Id.* at 709. This "substantial evidence" included an interoffice memo in which one of Ross's superiors inquired, "When can we bring this problem person to a termination status[?] P.S.—Back Case." *Id.* at 704.[3] The Court reversed summary judg-

---

**3.** Besides the "Back Case" memo, Ross introduced evidence that, after his fifth back injury, his supervisors suggested that he find work elsewhere, and that, after Ross declined, they placed him on probation, gave him a sharply negative job performance review, and assigned him significantly higher sales quotas. *Id.* at 703–04.

ment, concluding that a reasonable jury might rely on evidence of pretext to find that the employer's true motive for terminating Ross had been discriminatory.

In *Cotter*, the Sixth Circuit followed *Ross*, but limited its holding to those cases in which the plaintiff has presented enough evidence to create a genuine factual dispute as to whether the employer regarded its employee as unable to work. *See Cotter* at 599–601. Here, Plaintiff has presented evidence that Defendant's policy requiring that all loads be fastened under tarps—the policy Plaintiff was terminated for being unable to follow—suddenly was enforced for the first time in five years once Plaintiff returned to work after his second heart-related hospital visit, and that, after Plaintiff was terminated, the policy was enforced with great laxity, if at all. As further evidence that Quikrete's true motive for terminating him was discriminatory, Plaintiff notes that he never had received a negative performance review in five years of employment until he received two the week after the second heart-related hospital visit. *See Ross*, 237 F.3d at 708 (sudden drop in performance evaluation can be proof of pretext).

In short, Plaintiff has presented enough evidence to merit jury consideration of his claim that Quikrete regarded him as substantially limited in working.

## VII.

■ Defendant argues that, even if Plaintiff is disabled within the ADA's meaning, he fails to state a *prima facie* case because his lifting restriction limited him from performing the essential functions of his job. *See* 42 U.S.C. § 12111(8).

Further, Defendant argues that Plaintiff rejected its proposed reasonable accommodation, which renders him unable to prevail on his claim.

After establishing a disability under the ADA, a plaintiff must show that he is " 'otherwise qualified' for the position despite the disability either (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Monette*, 90 F.3d at 1186. Once Plaintiff has met his burden, "the employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Id.* Plaintiff argues that the ability to lift heavy tarps is not an essential job requirement. For one, there are other methods of binding bags of cement to truck beds which do not require heavy lifting, such as stretch- or shrink-wrapping, both of which Defendant regularly did before implementing its tarping policy. Further, Plaintiff argues, even if Defendant found it necessary to tarp all loads, it could assist Plaintiff by offering him use of a forklift. In response, Defendant says that it implemented the policy in order not to be cited by the Indiana State Police, that Plaintiff's proposed accommodation was unreasonable, and that Plaintiff's rejection of its proposed accommodation—reassignment to office duties and operation of a tanker truck—was unreasonable.

### A.

EEOC guidelines instruct courts determining the essentiality of a job function to consider the following list of factors:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). This list is instructive, rather than exhaustive. *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir.2000).

As to the first factor, Defendant clearly has argued that the ability to lift the tarps is an essential function of the job of delivery driver. However, its policy of lenient—and possibly selective—enforcement suggests that Defendant does not actually regard this function as essential. The second and fifth factors offer no guidance here, because Quikrete did not advise delivery driver applicants of any lifting requirement, nor does this function appear in any collective bargaining agreement. The third factor favors Plaintiff: the amount of time spent lifting the tarps is not substantial. The fourth factor's relevance is uncertain. Plaintiff's inability to lift the tarps is of little consequence if, as he claims, the Indiana State Police do not require Defendant to tarp its loads; but it is quite substantial if, as Defendant contends, the Indiana State Police do require tarping. The sixth factor, past work experience of other Quikrete delivery drivers, supports Plaintiff; before April 7, 1999, Defendant enforced its tarping policy only in inclement weather. The seventh factor, present work experience of Quikrete delivery drivers, supports Plaintiff if Defendant currently does not enforce its tarping policy, but supports Defendant if it currently does.

Ultimately, "[t]he determination of whether a given function is 'essential' within the meaning of the ADA and regulations promulgated thereunder is typically a question of fact and thus not suitable for resolution through a motion for judgment as a matter of law." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 585 (6th Cir.2001) (quotation, citation omitted). The Court finds that Plaintiff has submitted the evidence necessary to create a genuine question of fact whether tarping loads is an essential job function for Defendant's delivery drivers. At trial, "the employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity ..." *Monette*, 90 F.3d at 1186.

### B.

■ If, at trial, Defendant succeeds in proving that tarping loads is an essential function of the job of delivery driver, the jury must then decide whether Plaintiff could perform the essential functions of the job "with a proposed reasonable accommodation." *Monette*, 90 F.3d at 1186.

When discussing the new tarping policy with Lee Andrews, his supervisor, Plaintiff proposed that the forklift could be used for that purpose. Andrews refused, but suggested that Smith instead split his work time between supervisory office duties and driving a tanker truck. Plaintiff and Defendant each argue that the other's proposed accommodation is unreasonable.

The ADA does not define "reasonable accommodation" *per se*, but offers examples:

The term "reasonable accommodation" may include—

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position,* acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9) (emphasis added). Given that a forklift is used to load the trucks, use of the forklift to place the tarp on the truck seems reasonable. However, an employer is not required to adopt its employee's proposed reasonable accommodation if it offers another. "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Hankins v. The Gap, Inc.,* 84 F.3d 797, 800 (6th Cir.1996) (quotation marks, citation omitted); *cf. Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) ("We find no basis in either [Title VII of the Civil Rights Act of 1964] or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms [Title VII] directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation."). Thus, if Defendant's offer to reassign Plaintiff reasonably accommodated his disability, and Plaintiff rejected the accommodation, he may not recover under the ADA. *See* 29 C.F.R. § 1630.9(d) ("[a] qualified individual with a disability is not required to accept an accommodation .... However, if such individual rejects a reasonable accommodation ... that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.").

Plaintiff claims that operation of the tanker truck would necessitate the turning of a heavy crank to lift the trailer onto the truck hitch, a task which requires force beyond his lifting restrictions.[4] Each party has commissioned a witness to testify as to what lifting ability is necessary to perform the essential job function of turning this crank.[5] Thus, whether reassignment to this job would have been a reasonable accommodation seems a question of fact worthy of jury consideration.

The Court will enter an Order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved for summary judgment on Plaintiff's claim of disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

Trial will commence on June 17, 2002.

---

**4.** Plaintiff claims that, on an occasion before being offered reassignment to a tanker truck, he attempted to perform this function upon request by a supervisor, and was unable to do so.

**5.** It appears not to be in dispute that operating this crank is an essential function of this job.