Frank A. PERNAK, III, Plaintiff,

v.

ASHLAND, INC., d/b/a VALVOLINE INSTANT OIL CHANGE, Defendant.

No. 03–72930.

United States District Court, E.D. Michigan, Southern Division.

Aug. 16, 2004.

Robert J. Dinges, Detroit, MI, for Plaintiff Attorneys.

George W. Steel, Flint, MI, for Defendant Attorneys.

### *OPINION AND ORDER*

FEIKENS, District Judge.

## I. INTRODUCTION

This is an employment disability discrimination suit filed under Michigan's Persons With Disabilities Civil Rights Act, ("PWDCRA"), M.C.L. § 37.1101 *et seq.* Plaintiff alleges that Defendant employer discriminated against him by demoting him and failing to accommodate his disability.

Now, Defendant brings a Motion for Summary Judgment arguing that: (1) Plaintiff is unable to perform the "essential functions" of his former Assistant Manager position; and (2) Defendant cannot accommodate Plaintiff's disability without suffering an "undue hardship."

Plaintiff opposes Defendant's Motion for Summary Judgment, and argues that: (1) Plaintiff is able to and did perform the "essential functions" of an Assistant Manager; (2) Defendant accommodated Plaintiff by not requiring Plaintiff to perform "non-essential" functions of the Assistant Manager job for approximately 5 years; (3) Defendant has presented no evidence of "undue hardship"; and (4) Defendant acted in bad faith by failing to discuss the issue of reasonable accommodations with Plaintiff.

For the reasons that follow, Defendant's Motion for Summary Judgment is DENIED.

## II. FACTUAL BACKGROUND

### A. Procedural History

On June 25, 2003, Plaintiff, Frank A. Pernak, filed a Complaint against his employer, Defendant Ashland Inc., d/b/a Valvoline Instant Oil Change, ("Valvoline"), for disability discrimination, pursuant to the PWDCRA, M.C.L. § 37.1101 *et seq.*, in the Circuit Court for the County of Wayne, Michigan. On July 30, 2003, a Notice of Removal was filed in this Court. Plaintiff is a resident of Wayne County, Michigan, and was employed by Defendant as an Assistant Manager at the time of his demotion. Defendant is a Kentucky corporation that operates a number of businesses in Michigan.

Plaintiff alleges that Defendant discriminated against him on the basis of his disability. Plaintiff has suffered from cerebral palsy since birth, and as a result has paralysis of both legs and a slight speech impediment. (Pl.Compl.¶ 9–10.) Plaintiff's disability "primarily impacts his mobility." (Pl. Br. in Opposition, 2.) Plaintiff "cannot walk any distance without the assistance of forearm lifts," and even with such assistance Plaintiff is admittedly "slower than the average person." (Pl. Br. in Opposition, 2.) Plaintiff "has limitations standing and performing overhead work," and "has difficulty walking up and down stairs because of his lack of maneuverability." (Pl. Br. in Opposition, 2.)

On April 19, 2004, Defendant filed the instant Motion for Summary Judgment.

### B. Plaintiff's Employment as Technician II

On April 25, 1995, Plaintiff began working for Defendant as a Technician II. (Pl.Complaint, ¶ 4.) The primary responsibility of a Technician is to work on cars. (Pl. Br. in Opposition, 2.) Technicians perform both "top-side" and "bottom-side" work. (Pl. Br. in Opposition, Ex. 6, Job Description.) "Top-side" work involves "service checks" such as checking the transmission fluid and the air pressure in tires. (Pl. Br. in Opposition, 5.) "Bottom-side" services include "lubricating necessary components of the chassis/driveline, draining the oil from the vehicle, [and] replacing the oil filter." (Pl. Br. in Opposition, Ex. 6.) According to the written job description, Technicians must satisfy the following physical requirements:

(1) Must be able to lift up to 50 pounds.

(2) Must have full mobility, twisting, turning, and working for extended periods of time with hands above the head.

(3) Must stoop four times per vehicle up to 6 to 10 times per hour of work.

(4) Must be able to stand for extended periods of time each shift worked.

(5) Must be able to climb stairs.

(Pl. Br. in Opposition, Ex. 6.)

Defendant appears to have immediately accommodated Plaintiff's disability by excusing Plaintiff from performing certain job functions of the Technician position. Plaintiff states in his Affidavit that "at or about the time of my hire, my Area Manager, Glen Brown, specifically told me that

he did not want me working the pit (the oil changes take place in the pit) performing what is called 'bottom-side' work." (Pernak Aff. ¶ 4.) According to Plaintiff, "[t]here were others who could perform pit work and there were many other tasks for the Plaintiff to engage in." (Pl. Br. in Opposition, 3.) Defendant admits that it made "allowances" for Plaintiff's disabilities. (Def. Reply Br. 7.) Though Plaintiff did not perform certain functions listed in the job description, such as "bottom-side" work, Defendant certified Plaintiff as qualified for the Technician position. (Pl. Br. in Opposition, Ex. 2, Certified Superpro Technician II.)

## C. Plaintiff's Employment as Assistant Manager

On October 15, 1997, Plaintiff was promoted to Assistant Manager—a position he held for approximately 5 years. (Def.Br., 4.) During that time, Plaintiff alternated between Defendant's Oak Park, Novi, Dearborn, Livonia, and Farmington stores. (Def.Br., 4.) The duties of an Assistant Manager include managing the Service Center, supervising and training employees, opening and closing the Service Center, delivering bank deposits, handling service failures, performing oil changes and additional services on customer vehicles, controlling inventory, and assisting in the scheduling of employees. (Pl. Br. in Opposition, Ex. 7, Job Description.) Assistant Managers must satisfy the same physical requirements as Technicians, and they must also be able to use a computer. (Pl. Br. in Opposition, Ex. 7.)

Defendant argues that Plaintiff is unable to perform the "essential" functions of the Assistant Manager position. Defendant relies on the affidavits of Shanon Neuman, a former Human Resource Representative of Defendant, and Jason Welbourn, an Area Manager of Defendant. Neuman and Welbourn state that Plaintiff "could not physically perform the duties of Assistant Manager" in the following ways:

(1) Plaintiff "was very slow which affected service times."

(2) Plaintiff "could not do bottom side work" or "perform oil changes."

(3) Plaintiff "was deficient in handling service failures."

(4) Plaintiff "had difficulty and/or incapability of operating appropriate equipment in the opening and closing of the service center."

(5) Plaintiff "was deficient in handling inventory."

(6) Plaintiff "was not able to lift 50 pounds."

(7) Plaintiff "did not have full mobility, twisting, turning, and working for extended periods of time with hands above head."

(8) Plaintiff "was not able to stoop four times per vehicle up to six to ten minutes per hour of work."

(Def. Br., Ex. B and C.) Defendant contends that "the duties that Mr. Pernak cannot perform are essential functions." (Def. Supplemental Br., 8.)

Plaintiff disagrees with Defendant's characterization of his abilities and the requirements of the Assistant Manager position. Plaintiff contends that, as an Assistant Manager, his "primary responsibility was customer service." (Pl. Br. in Opposition, 3.) Plaintiff alleges he "handled customer orders," and "sold supplies and equipment to customers." (Pl. Br. in Opposition, 6.) Plaintiff also alleges that he "had management responsibilities" including, "handling service failures, opening and closing the service center, handling the inventory, working on the computer, and handling cash deposits." (Pl. Br. in Opposition, 6.) Plaintiff argues that he was able to perform all of the above allegedly "essential functions" of the Assistant Manag-

er position. Contrary to the affidavits of Neuman and Welbourn, Plaintiff specifically denies that he was deficient in opening and closing the service center, handling inventory, and handling service failures. (Pernak Aff. ¶ 6.)

Plaintiff admits that he was "slow" at performing "top-side" work and "stooping" (to put air in tires). (Pernak, Aff.¶ 6.) However, Plaintiff alleges that as an Assistant Manager he "was rarely required to perform [such work] because there were technicians available to perform the work." (Pernak, Aff.¶ 6.) In addition, Plaintiff admits that he did not perform certain duties listed in the Assistant Manager job description, such as "bottom-side" work, heavy lifting, and overhead work. (Pl. Br. in Opposition, 5.) Plaintiff asserts that these functions were "non-essential" functions of his Assistant Manager position. (Pernak Aff. ¶ 8.) Plaintiff also asserts that he "was never trained to perform bottom side work and therefore there was never an attempt to see if he could perform bottom side work." (Pl. Br. in Opposition, 6.) Plaintiff alleges that Defendant accommodated him with respect to the physical requirements of the Assistant Manager position by not requiring Plaintiff to perform the above allegedly "non-essential" functions of the position. (Pernak Aff. ¶ 8.)

### D. Performance Reviews of Plaintiff as Assistant Manager

Plaintiff received multiple positive performance evaluations while working as an Assistant Manager. On May 15, 1998, Defendant rated Plaintiff "very effective."[1] (Pl. Br. In Opposition, Ex. 4, Performance Review, May 15, 1998.) A rating of "very

effective" means that "[p]erformance is consistently effective and there are no weaknesses in carrying out the major accountabilities of the job." *Id.* Plaintiff's evaluation included comments such as, "very good with P.C.," and "need to be hard on disapline [sic]." *Id.*

On December 14, 1998, Defendant rated Plaintiff "very effective" and "exceptionally effective" (the highest possible rating). (Pl. Br. in Opposition, Ex. 4, Performance Review, Dec. 14, 1998.) A rating of "exceptionally effective" means that the employee "[p]erforms beyond requirements in all major accountabilities," and makes contributions that are "clearly outstanding, especially when performing the most difficult and challenging aspects of the job." *Id.* Plaintiff's supervisor noted that Plaintiff "needs a little more work" in the work standards category, and that he was "a little to [sic] pushy" in the customer service category. *Id.* Plaintiff received favorable comments such as, "learning quick," "works very hard," "no problems," "can't be better," and "work standards are very good." *Id.*

On June 21, 1999, Defendant rated Plaintiff "exceptionally effective." (Pl. Br. in Opposition, Ex. 4, Performance Review, June 6, 1999.) Plaintiff's supervisor noted that Plaintiff "needs a little more work" in the customer service category, but also noted that there were "no claims." *Id.* Plaintiff received favorable comments such as, "Frank exceeds his job," "no service failures," "doing a very good job," "no problems with job," and "can't be better." *Id.*

Sometime in 2000, the month and day being unclear from the copy contained in

1. Defendant has a six-level rating system for evaluating the performance of employees. "Exceptionally effective" is the highest possible rating, followed by "very effective," which is the second highest possible rating. Other ratings include "effective," "marginal," and "unacceptable." The lowest possible rating is "too new to evaluate." (Pl. Br. in Opposition, Ex. 4.)

the record, Defendant rated Plaintiff "very effective." (Pl. Br. in Opposition, Performance Rating, 2000.) The performance review appears to reflect an evaluation of the first quarter of 2000 ending on February 1, 2000, and of the second quarter of 2000, ending on April 1, 2000. There do not appear to be any comments relating to this evaluation in the record.

In another performance review, the date of which is also unclear from the copy contained in the record, Defendant rated Plaintiff "effective." (Pl. Br. in Opposition, Ex. 4, Performance Review, 3/18/—.) A rating of "effective" means that the employee is performing in a way that "is expected of a fully qualified and experienced person in that position," and that "[m]ajor accountabilities are performed in an acceptable fashion." *Id.* The performance review commented that "Frank doesn't work on vehicles, so he need [sic] to in some other way, assert himself as an Assistant, helping to train and delegate," and noted that "Frank is good at working computer [sic] but need [sic] to work on getting the best out of employees." *Id.*

In 2002, soon before Plaintiff was demoted from his Assistant Manager position, Defendant rated Plaintiff "very effective" and "effective." (Pl. Br. in Opposition, Ex. 5, Performance Review, 2002.) The performance review included a biannual rating, dated August, 29, 2002, of "very effective." The performance review noted that Plaintiff had "great control on labor." Despite the rating of "very effective," the review stated that Plaintiff "needs to work on his speed in all that he does." *Id.* This appears to have been the first performance review to expressly mention the "speed" of Plaintiff's performance.

### E. Plaintiff's Demotion from Assistant Manager

Sometime in 2002, Emmanuel Dunham began working as Plaintiff's new store manager. (Def.Br., 5.) Subsequently, in the Summer of 2002, Defendant contends that Dunham, Welbourn, and Neuman coordinated "to assess and evaluate the situation" and concluded that Plaintiff "simply was not capable of performing the physical requirements of Assistant Manager." (Def.Br., 5,7.) As a result, allegedly in August of 2002, Defendant made the decision to offer Plaintiff a severance package or a different job. (Def.Br., 5.) No documentation exists evincing the type of evaluation process Dunham, Welbourn, and Neuman allegedly engaged in before concluding that Plaintiff could not perform the duties of an Assistant Manager.

On January 20, 2003, Plaintiff was called into a meeting with Welbourn, Neuman, and Michael Tolzman, the Regional Manager. (Pernak Aff. ¶ 2.) They allegedly told Plaintiff that he was being removed from his job as Assistant Manager and that he could either "sign a separation package (4 weeks pay) or work part time (10 hours or so) as a clerk at the regional office." (Pernak Aff. ¶ 2.) Allegedly, "there was no discussion about the tasks that [Plaintiff] could or could not perform," or "about performance reviews by [Plaintiff's] store managers." (Pl. Br. in Opposition, 6.) Plaintiff refused to sign the separation package and took the assignment to work at the Regional Office. (Pl.Complaint, ¶ 16.) Subsequently, Plaintiff filed this suit against Defendant for disability discrimination under the PWDCRA.

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). However, the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. 242 at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party is satisfied where there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Persons With Disabilities Civil Rights Act–M.C.L. § 37.1101 *et seq.*

Michigan's Persons With Disabilities Civil Rights Act, ("PWDCRA"), M.C.L. § 37.1101 *et seq.*, formerly known as the Handicappers' Civil Rights Act, ("HCRA"), prohibits discrimination against persons with disabilities because of their disabilities. *Peden v. City of Detroit*, 470 Mich. 195, 203, 680 N.W.2d 857 (2004). "The purpose of the act is to mandate 'the employment of the handicapped to the fullest extent reasonably possible.'" *Id.* (quoting *Chmielewski v. Xermac, Inc.*, 457 Mich. 593, 601, 580 N.W.2d 817 (1998)). The PWDCRA provides that an employer may not "[d]ischarge or otherwise discriminate against an individual...because of a disability or genetic information that is unrelated to the individual's ability to perform

the duties of a particular job." M.C.L. § 37.1202(1)(b).

The PWDCRA mandates that employers must "accommodate a person with a disability" unless such accommodation "would impose an undue hardship." M.C.L. § 37.1102(2). An employer's duty to make reasonable accommodation does not extend to "recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position." *Kerns v. Dura Mechanical Components., Inc.*, 242 Mich.App. 1, 618 N.W.2d 56, 64 (2000) (citations omitted). However, the duty to accommodate does include "job restructuring" where such restructuring "involves only minor or infrequent duties relating to the particular job held by the handicapper." *Holmes v. Electronic Data Systems Corp.*, 1995 WL 871157 (E.D.Mich., Edmunds, J.) (citing M.C.L. 37.1210(15)). *See also* M.C.L. § 37.1210(15).

Under the PWDCRA, "disability" is defined as a "determinable physical or mental characteristic of an individual" that "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. § 37.1103(d)(i)(A). A disability is "unrelated to the individual's ability" where "with or without accommodation, an individual's disability does not prevent the individual from ... performing the duties of a particular job or position." M.C.L. § 37.1103(1)(i). The PWDCRA does not specify how a court should determine "what the *duties of a particular job* are." *Peden*, 470 Mich. at 217, 680 N.W.2d 857 (2004) (emphasis in original). However, because "[c]laims of handicap discrimination under Michigan law essentially track those under federal law," *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 n. 3 (6th Cir.

1996), courts may look to the Americans with Disabilities Act ("ADA") for guidance.

■ Under the ADA, only those functions that constitute the "essential" functions of a position are relevant to determining whether a disabled individual can perform the duties of a particular job. *See* 42 U.S.C. § 12111(8). A job function is "essential" if "its removal would 'fundamentally alter' the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n) app. at 356). "Essential" functions are "the 'fundamental job duties' of a position, not those that are 'marginal.'" *Hamlin v. Charter Township of Flint*, 942 F.Supp. 1129, 1138 (E.D.Mich.1996). In evaluating whether a job function is "essential" under the ADA, the following evidence may be considered:

(1) the employer's judgment as to which functions are essential;

(2) written job descriptions prepared before advertising or interviewing applicants for the job;

(3) the amount of time spent on the job performing the function;

(4) the consequences of not requiring the incumbent to perform the function;

(5) the terms of a collective bargaining agreement;

(6) the work experience of past incumbents in the job; and/or

(7) the current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). In applying a similar analysis to cases brought pursuant to Michigan law, Michigan courts have emphasized that "[t]he duties of a particular job are not determined solely by reference to the employer's definition of the job." *Szymczak v. American Seating Co.*, 204 Mich.App. 255, 514 N.W.2d 251 (1994) (citation omitted). However, under the

PWDCRA, "the employer's judgment is entitled to substantial deference." *Peden,* 680 N.W.2d at 871 (2004).

In the Sixth Circuit "[d]istinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs." *Monette,* 90 F.3d at 1184. In cases, such as the present one, where the plaintiff "has direct evidence that the employer relied on his or her disability in making an adverse employment decision," the Sixth Circuit has determined that courts should apply the following framework:

(1) The plaintiff bears the burden of establishing that he or she is "disabled."

(2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability:

  (a) without accommodation from the employer;

  (b) with an alleged "essential" job requirement eliminated; or

  (c) with a proposed reasonable accommodation.

(3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer."

*Monette,* 90 F.3d at 1186.

The *Monette* framework is equally applicable to cases brought under either the ADA or the PWDCRA. *Hamlin,* 942 F.Supp. at 1138 (E.D.Mich.1996) (the *Monette* framework is "the law of the Sixth Circuit with respect to the ADA and [Michigan law]"). The framework differs under the PWDCRA only as to the burdens of proof and persuasion regarding

evidence that a proposed accommodation may constitute an "undue hardship." Under the PWDCRA, a defendant employer bears only the burden "of *producing* evidence that an accommodation would impose an undue hardship." M.C.L. 37.1210(1) (emphasis added). Once the employer satisfies this burden, the employee bears the ultimate burden "of proving by a preponderance of the evidence than an accommodation would not impose an undue hardship" on the employer. M.C.L. 37.1210. *See also Monette*, 90 F.3d at 1183 n. 10.

In this case, Defendant has conceded that Plaintiff is "disabled" for purposes of this motion. (Def.Supp.Br., 3.) The parties disagree as to whether Plaintiff was "otherwise qualified" for the Assistant Manager position despite his disability, because they disagree whether Plaintiff can perform the "essential functions" of the position. The parties also disagree as to whether accommodating Plaintiff's disability, by eliminating certain functions of the Assistant Manager position, creates an "undue hardship" for Defendant.

### 1. Whether Plaintiff Can Perform the "Essential Functions" of the Assistant Manager Position?

■ Defendant argues Plaintiff cannot perform the essential functions of the Assistant Manager position. Plaintiff argues that he can perform the job, despite his disability, with "non-essential" functions eliminated from the position. (Pl. Br. in Opposition, 9.) According to Plaintiff, the duties Defendant allegedly did not require him to perform, such as "bottom-side" work, heavy lifting, overhead work, and other physical tasks, are "non-essential" functions of the Assistant Manager position. (Pl. Br. in Opposition, 3,5.) Plaintiff contends that the duties he was admittedly "slow" at performing, such as "top-side" work, were ones he was called. upon to perform infrequently, and suggests that

these also are non-essential functions. (Pl. Br. in Opposition, 6.) Defendant bears the burden of proving that the challenged job functions are "essential." *Monette v. Electronic Data Systems*, 90 F.3d 1173 at 1186 (6th Cir.1996).

The record includes evidence supporting Defendant's argument that Plaintiff is not "otherwise qualified" to perform the Assistant Manager position. The strongest evidence is the written job description of the position, which includes duties and physical requirements that Plaintiff admittedly did not perform, or performed slowly, while an Assistant Manager (Def.Br., Ex. A.) Other evidence supporting Defendant's argument are the affidavits of Neuman and Welbourn, which both state that Plaintiff "could not physically perform the duties of Assistant Manager." (Def. Br., Ex. B and C.) However, the affidavits of Neuman and Welbourn do not provide Defendant with strong support because they consist largely of unsupported allegations. For example, the affidavits state that "Mr. Pernak was very slow which affected service times," without pointing to any evidence that service times were actually affected. The affidavits state that "essential tasks were not completed," without identifying the allegedly essential tasks to which the affidavits refer. The affidavits allege that Plaintiff was "deficient" in handling service failure, inventory, and opening and closing the service center, without providing any supporting evidence.

In addition, the record includes evidence supporting Plaintiff's argument that he is "otherwise qualified" to perform the Assistant Manager position. First, upon hiring Plaintiff as a Technician II, it appears that Defendant immediately accommodated Plaintiff by eliminating certain duties and physical requirements. Second, Defendant certified Plaintiff as qualified for both the Technician and Assistant Manager po-

sitions, even though Plaintiff clearly could not perform all of the duties and physical requirements listed in the job descriptions for both positions. Third, Defendant promoted Plaintiff to Assistant Manager, fully aware of Plaintiff's physical limitations. Fourth, Defendant retained Plaintiff in the Assistant Manager position for approximately 5 years. All of the above circumstances, suggest that for approximately 8 years Defendant did not treat the challenged functions as essential to either the Technician II or Assistant Manager positions.

Plaintiff repeatedly asserts that the challenged duties "were non-essential functions because there were always technicians available to perform this type of work." (Pernak Aff. ¶ 8.) Defendant takes issue with this argument and cites to cases holding that an accommodation of having others perform a disabled individual's duties does not constitute a "reasonable accommodation." (Def.Supp.Br., 5.) However, Plaintiff's argument is not that Defendant should have accommodated him by making other employees perform essential functions of his position. Rather, Plaintiff's argument is that Defendant accommodated him by eliminating allegedly "non-essential" functions. Plaintiff cites the fact that other employees allegedly performed the challenged functions as part of their jobs as evidence that the need for Plaintiff to perform the challenged functions, while an Assistant Manager, was infrequent. This suggests that the challenged functions, as a practical matter, may have been "non-essential" to the Assistant Manager position.

The record also includes several years of positive performance reviews of Plaintiff as Assistant Manager. Defendant would have this Court believe that the performance reviews are merely "a reflection on [Plaintiff's] attitude and management's helping him succeed." (Def.Br., 4.) However, the reviews are not limited to a discussion of Plaintiff's "positive attitude." (Def.Br., 4.) Rather, the reviews evaluate Plaintiff's performance in several categories such as Service Failures, Safety, Profit to Plan, Delegation of Authority, Customer Service Orientation, and Work Standards. (Pl. Br. in Opposition, Ex. 4, Performance Reviews.) Over the course of many years, Defendant consistently rated Plaintiff as above average. Plaintiff's ratings consistently reflected that he had "no weaknesses in carrying out the major accountabilities of the job." (Pl. Br. in Opposition, Ex. 4, Performance Review.)

Therefore, it is clear that Defendant has failed to carry its burden of proof, and that a material question of fact exists as to whether the challenged functions are "essential" functions of the Assistant Manager position, and thus as to whether Plaintiff is "otherwise qualified" for the Assistant Manager position.

2. **Whether Eliminating Allegedly Non–Essential Functions Creates an "Undue Hardship" for Defendant?**

■ Defendant argues that allowing Plaintiff to work as an Assistant Manager with the challenged functions eliminated would force Defendant to endure an "undue burden." (Def.Br., 11.) Plaintiff bears the ultimate burden of proving that the elimination of the challenged functions would not impose an undue hardship on Defendant. M.C.L. § 37.1210. However, Defendant bears the burden "of producing evidence that an accommodation would impose an undue hardship." M.C.L. § 37.1210(1).

In this case, Defendant has not provided any evidence demonstrating that allowing Plaintiff to remain in the Assistant Manager position with the allegedly non-essential functions eliminated caused, or would have caused, Defendant to suffer an "undue

hardship." Defendant argues that if Plaintiff "were to remain in the position of Assistant Manager, then it would be necessary to essentially hire another Assistant Manager or at least reassign many of the required job tasks, to assist him with the performance of his job." (Def.Br.11.) However, Defendant has produced no evidence demonstrating that such an accommodation was required during the 5 years that Plaintiff actually worked as an Assistant Manager. Defendant has also provided no evidence explaining why the situation is any different now than it was for the 5 years during which Plaintiff was employed as an Assistant Manager.

Defendant offers a second affidavit submitted by Welbourn, stating that Plaintiff's "inability to perform various services, and/or slowness in accomplishing physical duties, significantly compromises the speed, efficiency and quality of services offered by the Valvoline Instant Oil Change stores." (Def. Reply Br., Ex. A.) However, Welbourn fails to support this conclusory allegation with any evidence. Welbourn also states that he "had a number of conversations with Mr. Pernak regarding the inabilities and slowness of accomplishing the duties of Assistant Manager." (Def. Reply Br., Ex. A.) However, Plaintiff asserts that "Welbourn never criticized my job performance and he always said I was doing a good job." (Pernak Aff. ¶ 7.)

It is clear that Defendant has failed to carry its burden of producing evidence demonstrating that accommodating Plaintiff, by eliminating the allegedly non-essential functions of the Assistant Manager position, created an "undue hardship" for Defendant.

### C. Plaintiff's Lack of "Good Faith" Argument

Plaintiff cites federal regulation interpreting the ADA, 29 C.F.R. 1630.2(*o*)(3), to

argue that Defendant failed to engage in an "interactive process" to determine whether reasonable accommodation of Plaintiff's disability was possible. (Pl. Br.7–8.) Although precedents interpreting provisions of the ADA analogous to provisions of the PWDCRA are persuasive, here Plaintiff cites to an interpretation of the ADA without citing to an analogous provision under Michigan state law. Thus, this section of Plaintiff's argument is not persuasive. However, this issue is not dispositive.

## IV. CONCLUSION

Therefore, for the above reasons, Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**